IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANASTASIA NEDD ALLEN<br><br>**Plaintiff,**<br><br>v.<br><br>MEGAN J. BRENNAN, POSTMASTER GENERAL<br><br>**Defendant.** | CIVIL NO. 2:20-CV-304 |

## COMPLAINT

Plaintiff Anastasia Nedd Allen asserts her causes of action against Megan J. Brennan, Postmaster General of the United States Postal Service, solely in her official capacity, as follows:

### THE PARTIES

1. Plaintiff is Anastasia Nedd Allen ("Anastasia Allen") a person of age and majority, and a Louisiana citizen residing in Orleans Parish.

2. Defendant is Megan J. Brennan, solely in her official capacity, a person of age and majority, the Postmaster General of the United States Postal Service, and the statutory head of the United States Postal Service. *See* 39 U.S.C. § 203 (providing that the Postmaster General is the chief executive of the United States Postal Service).

### JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 633a *et seq*. (ADEA and ADEA-retaliation in federal employment) as more particularly set-out herein.

4. The Court has personal jurisdiction over Ms. Brennan, solely in her official capacity and as the proper defendant representing the United States Postal Service, because all of the unlawful

1

employment practices alleged herein occurred in the state of Louisiana and give rise to the specific ADEA causes of action in this case, and thus Ms. Brennan, in her official capacity and as the proper defendant for the United States Postal Service, has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

5.  Venue for Ms. Allen's ADEA claims is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because (1) Postmaster General Brennan is, for purposes here, an officer of the United States, and (2) because the alleged discriminatory employment practices occurred within this forum (specifically Orleans and Jefferson Parishes), and, alternatively, Ms. Allen lives in this forum (specifically, Orleans Parish) and Ms. Allen's claim does not involve real property.

**PROCEDURAL AND STATUTORY ALLEGATIONS**

6.  At all relevant times, and upon information and belief, the United States Postal Service ("USPS") employed more than 500 employees.

7.  USPS hired Ms. Allen on or about April 30, 2018 in the position of city carrier assistant at the USPS post office station located at 1300 Florida Blvd, New Orleans, LA 70119 ("Central Station").

8.  Ms. Allen remained continuously employed with USPS until the date of her first termination on or about July 18, 2018.

9.  On August 22, 2018, Ms. Allen timely initiated EEO contact regarding her first termination (EEO Case No. 4G-700-0163-18), alleging that, among other things, her decision-maker, USPS Station Manager Joseph Porche, terminated her employment because of Ms. Allen's age, martial status, disability, and related hostile work environment.

10. On November 20, 2018, USPS and Ms. Allen settled Ms. Allen's complaint, and USPS, through its Station Manager Porche, reinstated Ms. Allen as a City Carrier Assistant at Central Station on December 8, 2018, subject to a renewed 90-day probationary period.

11. Starting on December 8, 2018, Ms. Allen remained continuously employed with USPS until the date of her second termination on or about February 26, 2019.

12. On January 6, 2019, prior to her second termination, Ms. Allen initiated another informal EEO contact (EEO Case No. 4G-700-0049-19) regarding an adverse workplace investigation conducted against her at Central Station, specifically that the investigation was motivated by Ms. Allen's age and in retaliation against her for her previous EEO claim.

13. On February 26, 2019, USPS terminated Ms. Allen's employment for the second time.

14. At some point between February 26, 2019 and March 11, 2019, and while still within the informal EEO process in Case No. 4G-700-0049-19, Ms. Allen timely included in that informal process an additional claim regarding her second termination, alleging that, among other things, she was terminated because of her age and in retaliation against her for filing her prior, protected EEO complaints.

15. On March 11, 2019, USPS issued Ms. Allen her Notice of Right to File a Complaint of Discrimination in the matter.

16. On March 19, 2019, Ms. Allen timely filed her Complaint of Discrimination in the Postal Service alleging that USPS, through the actions of its agents and employees Station Manager Joseph Porche, along with Ms. Allen's supervisors Charlotte Lagrue and Bianca Martin, terminated Ms. Allen because of her age and in retaliation against her because of Ms. Allen's prior EEO activity.

17. On April 11, 2019, USPS accepted for investigation Ms. Allen's claim of wrongful

termination based on her age and in retaliation for her prior EEO activity.

18. On May 28, 2019, Ms. Allen timely amended her Complaint of Discrimination to assert that (1) on or about February 26, 2019, Ms. Allen was not selected for hire at a USPS station in Metairie, Louisiana (job posting no. 10242872) based on her age and in retaliation against Ms. Allen because of her prior EEO activity; (2) on or about May 8, 2019, Ms. Allen was not selected for hire at a USPS station in Marrero, Louisiana (job posting no. 10292968) based on her age and in retaliation against Ms. Allen because of her prior EEO activity; and (3) on or about May 21, 2019, Ms. Allen was not selected for hire at a USPS station in Metairie, Louisiana (job posting no. 10292967) based on her age and in retaliation against Ms. Allen because of her prior EEO activity.

19. On June 4, 2019, USPS accepted for investigation Ms. Allen's amended claims that she was not hired for the positions applied for at Metairie Station (job posting no. 10242872); Marrero Station (job posting no. 10292968); and Metairie Station (job posting no. 10292967), as described above, because of her age and in retaliation against Ms. Allen because of her prior EEO activity.

20. Thereafter, USPS investigated Ms. Allen's age and retaliation claims as described above in Case No. 4G-700-0049-19.

21. On August 21, 2019, USPS concluded its investigation and forwarded its Record of Investigation to Ms. Allen.

22. On September 19, 2019, Ms. Allen timely requested a final agency decision in the matter.

23. On October 30, 2019, USPS rendered a final agency determination in the matter; dismissed Ms. Allen's case; and forwarded its decision to Ms. Allen.

24. Ms. Allen is aggrieved by USPS's final action on this complaint and invokes her right to file this federal complaint. *See* 29 CFR § 1614.407(a) (authorizing federal suit within 90 days of

receipt of notice of final action) *and also* and 29 U.S. Code § 633a(c) (authorizing federal suit for any aggrieved federal employee).

25. Ms. Allen timely files this federal complaint within 90 days of her receipt of the USPS final agency decision in this matter dated October 30, 2019.

## FACTS

**A.    The Plaintiff – Anastasia Allen**

26. Anastasia Allen is a 53-year-old woman who lives in New Orleans.

27. Ms. Allen successfully raised her three children and then decided to embark on a second professional career.

28. Ms. Allen received her certificate in paralegal studies from Tulane University in 2016.

29. Thereafter, Ms. Allen applied for and won a starting position with USPS at its "Central Station" location in New Orleans's Mid-City neighborhood.

**B.    The Defendant – Postmaster General Brennan on Behalf of the United States Postal Service**

30. Megan J. Brennan is the current duly appointed Postmaster General of the United States Postal Service.

31. USPS is an independent agency of the executive branch of the federal government.

32. Upon information and believe, at all relevant times to this lawsuit, the USPS had greater than 600,000 employees.

33. Per USPS administrative and business policies, the USPS is divided into various administrative units, one of which is a Post Office.

34. Upon information and belief, Post Offices may be subdivided into various "stations," each station servicing a particular geographical area.

35. Upon information and belief, the ultimate decision-maker at each at each station, including

for all administrative, disciplinary, and human resources issues within the station, is the "Station Manager."

36. At all relevant times in this lawsuit, the Station Manager of Central Station, and the ultimate decision-maker for all personnel decisions at Central Station with respect to Ms. Allen, was Joseph Porche.

**C.  Ms. Allen Immediately Faces Age Discrimination at Central Station**

37. USPS hired Ms. Allen as a city carrier assistant on April 30, 2018.

38. By rule, Ms. Allen began her work as a probationary employee for the first 90-days of her employment.

39. Ms. Allen's immediate supervisor was Tressie Henry.

40. One of Ms. Allen's initial job duties was delivering mail to residential neighborhoods.

41. USPS internally determines how long it figures each postal carrier should take to deliver the mail on a particular route.

42. Ms. Allen began her mail delivery training on a route in the Gentilly neighborhood.

43. Relevant here, USPS ordinarily partitioned its routes such that it would take a mail carrier six hours to complete.

44. However, Ms. Allen's supervisor, Tressie Henry, initially gave Ms. Allen only four-hour's worth of a standard route, but then gave Ms. Allen six hours to complete it (essentially, making the route "easier" to complete).

45. Ms. Allen questioned Ms. Henry as to why Ms. Henry had afforded Ms. Allen greater time to delivery her mail.

46. Ms. Henry responded that she was concerned about Ms. Allen's age, specifically that if required to deliver mail within four hours that Ms. Allen might get overheated and "die."

47. On July 17, 2018, Ms. Allen took approved leave for her wedding any honeymoon.

48. Ms. Allen was supposed to report back to work on August 1, 2018.

49. On July 31, 2018, while still on approved leave, Ms. Henry communicated with Ms. Allen and told her that her employment was terminated as ordered by Station Manager Joseph Porche. Upon information and belief, Mr. Porche terminated Ms. Allen because of her age and because of Mr. Porche's age-based biases and beliefs against Ms. Allen.

**D. Ms. Allen Files an EEO Complaint Alleging, Among Other Things, Age Discrimination, and USPS Settles and Reinstates Ms. Allen**

50. Ms. Allen timely filed an EEO complaint against USPS alleging that she was terminated because of her age, her marital status, her disability, and related hostile work environment (EEO Case No. 4G-700-0163-18).

51. USPS, through its agent and employee Station Manager Joseph Porche, agreed to mediate the dispute with Ms. Allen.

52. The parties mediated their dispute in November 2018.

53. USPS, through its agent and employee Station Manager Porche, agreed to reinstate Ms. Allen to her former position as a City Carrier Assistant at Central Station, subject to a renewed 90-day probationary period, in exchange for Ms. Allen voluntarily dismissing her EEO claim against USPS, and Ms. Allen agreed.

54. Thereafter, USPS reinstated Ms. Allen to her former position effective December 8, 2018.

**E. Station Manager Porche and His Supervisors Immediately Begin Discriminating and Retaliating against Ms. Allen in Her Reinstated Position, and Porche Terminates Ms. Allen for the Second Time**

55. Relevant here, in her reinstated position, Ms. Allen's new supervisor was USPS employee Charlotte Lagrue.

56. Upon information and belief, Station Manager Porche continued to harbor age-based

7

animus against Ms. Allen, and now harbored retaliatory animus against her because of Ms. Allen's prior EEO complaint which resulted in her reinstatement.

57. Upon information and belief, Station Manager Porche only agreed to reinstate Ms. Allen so that he could gin-up pretextual performance issues against Ms. Allen for the ultimate purpose of terminating her employment again within her renewed probationary period and escape further liability for his original age and other status-based animus against Ms. Allen.

58. Upon information and belief, Mr. Porche directed his subordinate employees, and Ms. Allen's direct supervisors, Charlotte Lagrue and Bianca Martin, to effectuate this pretextual discrimination and retaliation.

59. Alternatively or additionally, upon information and belief, Ms. Lagrue and Ms. Martin shared Mr. Porche's age-based discriminatory and retaliatory animus against Ms. Allen for the same reasons as described above.

60. Ms. Allen's supervisors immediately began issuing her pretextual counseling or discipline for various alleged poor performance either related to taking too long to delivery her mail, or failing to deliver her mail.

61. Upon information and belief, Ms. Allen never failed to deliver her mail, and in fact delivered her mail in the time allotted to her.

62. On or about January 6, 2019, Ms. Allen initiated informal EEO contact alleging that she was again being targeted for age-based discrimination and retaliation for her prior EEO activity.

63. Later in January, Ms. Allen's supervisor Charlotte Lagrue issued Ms. Allen an unsatisfactory "30-day" probationary evaluation.

64. Upon information and belief, Ms. Allen's probationary work was satisfactory, but her supervisor issued her unsatisfactory evaluations for the pretextual purpose of eventually

terminating Ms. Allen because of her age and in retaliation against her for engaging in her prior, protected EEO activity.

65. Likewise, Ms. Allen's supervisor later issued her unsatisfactory evaluations for Ms. Allen's "60-day" probationary milestones.

66. Upon information and belief, Ms. Allen's probationary work was satisfactory, but her supervisors issued her unsatisfactory evaluations for the pretextual purpose of eventually terminating Ms. Allen because of her age and in retaliation against her for engaging in her prior, protected EEO activity.

67. On February 26, 2019, Station Manager Porche terminated Ms. Allen's employment for failing "to perform work which meets the expectations of the position," failing "to accomplish tasks in an efficient and timely manner," and failing "to work at a sufficient speed to keep up with the amount of work required by the position."

68. Upon information and belief, Ms. Allen's work performance in these areas was satisfactory and unworthy of termination.

69. Upon information and belief, Station Manager Porche merely used these Ms. Allen's alleged unsatisfactory work performance as ginned-up, pretextual justifications to terminate Ms. Allen's employment because of her age and in retaliation against her for her prior protected EEO complaints (Case Nos. 4G-700-0163-18 and 4G-700-0049-19).

70. At some point between February 26, 2019 and March 11, 2019, Ms. Allen timely included an additional claim in her already existing informal EEO complaint (Case No. 4G-7000-0049-19) that Station Manager Porche terminated her because of her age in retaliation against Ms. Allen because of her prior, protected EEO activity.

**F.     Ms. Allen Is Blackballed Throughout USPS in the Greater New Orleans Area Because of Her Age and in Retaliation for Her Protected EEO Activities**

71.     Before her second termination, Ms. Allen began seeking out positions with other USPS post offices to escape the discrimination and retaliation at Central Station.

72.     Ms. Allen applied for a mail carrier position at a post office station in Metairie, Louisiana (Job Posting No. 10242872), under the leadership of postmaster Matthew McFall.

73.     Upon information and belief, as a standard practice in applying for any position with USPS, an applicant must list his her prior and current employment.

74.     When an applicant has current or prior employment with USPS, that applicant must list his or her manager.

75.     Accordingly, upon information and belief, when Ms. Allen applied for the Metairie position, she listed Mr. Porche has her manager at Central Station.

76.     Upon information and belief, Mr. Porche either learned of Ms. Allen's application to the Metairie station, or was contacted by officials from the Metairie station regarding Ms. Allen's application.

77.     Upon information and belief, Station Manager Porche gave Postmaster McFall or other decision-makers at Metairie station negative performance evaluations about Ms. Allen, that were untrue, for the discriminatory, retaliatory, and pretextual purpose of ensuring that she would not be selected for the Metairie position.

78.     Ultimately, on or about February 26, 2019 (the same day Ms. Allen was terminated from Central Station), Postmaster McFall did not select Ms. Allen for the position at Metairie station.

79.     Upon information and belief, Ms. Allen was fully qualified for the position at Metarie station.

80.     Prior to Ms. Allen's non-selection for the Metaririe position, she communicated with a

Metairie station USPS employee who advised her that Postmaster McFall was aware of Ms. Allen's prior EEO complaints against USPS and Station Manager Porche.

81. Upon information and belief, Postmaster McFall did not select Ms. Allen for the position at Metairie station either because of her age, in retaliation against Ms. Allen because of her prior EEO activity, or both.

82. Upon information and belief, had Ms. Allen by significantly younger, or had never engaged in protected EEO activity, or both, she would have been selected for the position.

**G.     Ms. Allen Is Not Selected for Another USPS Position in Marrero**

83. After Station Manager Porche terminated Ms. Allen's employment from Central Station on February 26, 2019, Ms. Allen applied for another position at the USPS post office station in Marrero, Louisiana (Job Posting No. 10292968).

84. Ms. Allen was selected for interview, and did interview, on April 26, 2019.

85. Ms. Allen was interviewed by Postmaster Alisa Leonard.

86. At the end of the interview, Postmaster Leonard indicated to Ms. Allen that Leonard would need to speak with Station Manager Porche before making a final hiring decision.

87. Upon information and belief, Postmaster Leonard did contact Station Manager Porche about Ms. Allen's application to Marrero station.

88. Upon information and belief, Station Manager Porche gave Postmaster Leonard or other decision-makers at Marrero station pretextual and negative performance evaluations about Ms. Allen that were untrue for the discriminatory, retaliatory, and pretextual purpose of ensuring that she would not be selected for the Metairie position.

89. Ultimately, on or about May 8, 2019, Postmaster Leonard did not select Ms. Allen for the position at Metairie station.

90. Upon information and belief, Ms. Allen was fully qualified for the position at Marrero station.

91. Upon information and belief, Postmaster Leonard did not select Ms. Allen for the position at Marrero station either because of her age, in retaliation against Ms. Allen because of her prior EEO activity, or both.

92. Upon information and belief, had Ms. Allen by significantly younger, or had never engaged in protected EEO activity, or both, she would have been selected for the position.

**H.  Ms. Allen Is Not Selected for Another USPS Position in Metairie because She Was "At War" with USPS**

93. In early April 2019, Ms. Allen applied for another City Carrier Assistant position at Metarie station (Job Posting No. 10292967).  This time, on or about April 30, 2019, Ms. Allen received notice that she had been hired for the position.

94. However, on or about May 21, 2019, Ms. Allen received a second notification that her offer had been rescinded.

95. Ms. Allen investigated the matter, contacted the main administrative offices of the New Orleans Post Office system, and eventually spoke with an administrative "field recruiter" named Tracy Segura.

96. Ms. Segura informed Ms. Allen that Segura had actually rescinded Ms. Allen's job offer after Ms. Segura learned, among other things, that Ms. Allen was "at war" with USPS because of her prior EEO charges against USPS and Station Manager Porche.

97. Ms. Allen then contacted Postmaster McFall about the rescinded offer.

98. Postmaster McFall indicated, among other things, that he knew about Ms. Allen's prior EEO charges and did not want to "get involved" with it.

99. Ms. Allen asserted that her prior complaints had nothing to do with Metairie station, but

Postmaster McFall responded that Ms. Allen would not be awarded the position she had applied for.

100. Upon information and belief, Ms. Allen was fully qualified for the position at Metairie station.

101. Upon information and belief, either Field Recruiter Seguara or Postmaster McFall did not select Ms. Allen for the position at Metairie station either because of her age, in retaliation against Ms. Allen because of her prior EEO activity, or both.

102. Upon information and belief, had Ms. Allen by significantly younger, or had never engaged in protected EEO activity, or both, she would have been selected for the position.

**I.     At All Times Ms. Allen Was Discriminated and Retaliated Against by USPS Employees and Agents in the Full Course and Scope of Their Employment**

103. As alleged throughout this lawsuit, Ms. Allen was terminated from her employment, and not selected for hire in multiple positions, because of age-based discrimination and in retaliation for her prior, protected EEO activities.

104. As alleged throughout this lawsuit, these discriminatory and retaliatory adverse employment actions were taken against Ms. Allen by, upon information and belief, Station Manager Porche, Postmaster McFall, Postmaster Leonard, and Field Recruiter Segura, who were each at all relevant times acting within the full course and scope of their employment with USPS, and as agents of USPS.

105. At all relevant times, upon information and belief, USPS, its executives, officers, and as an institution, knew or should of known of these discriminatory and retaliatory adverse employment actions, but took no steps to protect Ms. Allen from them.

**J.     Ms. Allen Timely Amended Her Complaint of Discrimination to Assert Related Claims for Her Discriminatory and Retaliatory Non-Selections in This Case**

106.    On or about May 28, 2019, Ms. Allen timely amended her Complaint of Discrimination to assert that (1) on or about February 26, 2019, Ms. Allen was not selected for hire at a USPS station in Metairie, Louisiana (job posting no. 10242872) based on her age and in retaliation against Ms. Allen because of her prior EEO activity; (2) on or about May 8, 2019, Ms. Allen was not selected for hire at a USPS station in Marrero, Louisiana (job posting no. 10292968) based on her age and in retaliation against Ms. Allen because of her prior EEO activity; and (3) on or about May 21, 2019, Ms. Allen was not selected for hire at a USPS station in Metairie, Louisiana (job posting no. 10292967) based on her age and in retaliation against Ms. Allen because of her prior EEO activity.

107.    USPS accepted these amendments and investigated them in this case.

**K.     Ms. Allen Timely Exhausted Her Administrative Remedies in This Case**

108.    After USPS finished its investigation in this matter, Ms. Allen timely requested a final agency decision on the merits.

109.    On October 30, 2019, USPS rendered its decision and dismissed Ms. Allen's EEO charge of discrimination.

110.    Ms. Allen is aggrieved by the final agency decision rendered by USPS and now files this timely lawsuit under the ADEA.

**L.     The Aftermath**

111.    Despite her diligent efforts, Ms. Allen has been unable to find reasonably equivalent replacement work after her termination from the USPS on February 26, 2019, and her non-selections for employment as described above.

112.    Because of USPS's unlawful employment actions in this case, Ms. Allen has suffered significant lost back wages, including wages, lost insurance, and other fringe benefits.

113. Because of USPS's unlawful employment actions in this case, Ms. Allen will likely suffer significant lost future wages.

114. Because of USPS's unlawful employment actions in this case, Ms. Allen has suffered significant out of pocket expenses, including self-employment expenses related to Ms. Allen's post-termination work as an Uber and Lyft driver to make end's meet after her termination and loss of income, and also reasonable attorney's fees and litigation costs incurred in this matter.

## CAUSES OF ACTION

**A.  Unlawful Age-Based Discrimination in Violation of the ADEA Against the United States Postal Service through its Chief Executive, Postmaster General Megan J. Brennan**

115. Pursuant to the Age Discrimination in Employment Act of 1967 (as amended), an employer may not "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a).  Specific to federal employment, the ADEA provides that "[a]ll personnel actions affecting employees . . . in the United States Postal Service . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  A plaintiff proves a prima facie case for unlawful disparate treatment based on age when he shows that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone significantly younger or otherwise because of his age.  *Flanner v. Chase Inv. Servs. Corp.*, 600 Fed. Appx. 914, 917-18 (5th Cir. 2015).  In the Fifth Circuit, a replacement worker who is five years younger than the plaintiff may be "significantly" younger.  A federal-employer defendant who violates the ADEA is liable for plaintiff's lost back wages, specific compensatory damages, and front wages.

116. In this case, as alleged throughout, Ms. Allen first began working for the USPS at its Central Station in New Orleans in April 2018.  Ms. Allen's immediate supervisor, Ms. Henry,

immediately treating Ms. Allen differently because of her age because, as Ms. Henry indicated to Ms. Allen, she was concerned about Ms. Allen's age and that the stress of mail carrying might cause Ms. Allen to "die." Less than 90 days after first hiring her, Station Manager Joseph Porche terminated Ms. Allen while she was on approved marital leave. Ms. Allen's performance to date had been satisfactory and she was qualified for her position. Upon information and belief, Mr. Porche terminated Ms. Allen because of her age and his age-based, discriminatory, perceptions about Ms. Allen.

117. Later, after Ms. Allen was reinstated to her position, she was again terminated less than 90 days after beginning her work for reasons that were essentially targeted to the same sort of age-based bias present in her first termination. In his termination letter, Mr. Porche indicated that among other things he believed Ms. Allen could not work fast enough for her position. But once again Ms. Allen's work had been satisfactory and she was qualified for her position. Around the same time, Mr. Porche had terminated other, older works around the same age as Ms. Allen. Upon information and belief, Mr. Porche simply terminated Ms. Allen again because of the same aged-based discriminatory animus that motivated his decision the first time.

118. Likewise, upon information and belief, this same age-based bias motivated Postmasters McFall and Leonard to not select Ms. Allen for her positions in Metairie and Marrero, despite Ms. Allen's objective qualifications for the jobs. In each instance of non-selection, upon information and belief, Station Manager Porche communicated his bias against Ms. Allen to McFall and Leonard, which formed the discriminatory basis of their non-selections.

119. Upon information and belief, Ms. Allen would not have been terminated from USPS, and would have been hired for each position that she had applied for, but-for her age and her decision-maker's age-based discriminatory bias against her.

120. At all times, Porche, McFall, and Leonard took their unlawful employment actions against Ms. Allen while in the full course and scope of their employment responsibilities with USPS and as USPS's agent.

121. Accordingly, the USPS, through Postmaster General Brennan, is liable to Ms. Allen for all statutory and equitable damages caused by their illegal employment discrimination, including lost back wages, lost future wages, and specific compensatory damages.

**B.    Unlawful Retaliation in Violation of the ADEA Against the United States Postal Service through its Chief Executive, Postmaster General Megan J. Brennan**

122. The United States Supreme Court specifically holds that a federal employee may assert a cause of action for retaliation against a federal agency or officer under the ADEA. *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (so holding). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). In the Fifth Circuit, at least at present, a federal-employer defendant who violates the ADEA is liable for plaintiff's lost back wages, specific compensatory damages, and front wages.

123. In this case, as alleged, Station Manager Porche settled Ms. Allen's EEO charge in her first case (EEO Case No. 4G-700-0163-18) merely to avoid further EEO liability by reinstating Ms. Allen, subject to a new 90-day probationary term, so that Porche could then gin-up pretextually and untrue performance issues to justify a second, probationary termination. Upon information and belief, that is exactly what Mr. Porche and his supervisors did to Ms. Allen, culminating in her pretextual and retaliatory termination on or about February 26, 2019. This termination took place less than four months after Mr. Porche agreed to settle Ms. Allen's original EEO disputue, and less than two months after Ms. Allen filed a second EEO informal complaint alleging further age-based

discrimination and retaliation against Mr. Porche and his supervisors on or about January 6, 2019.

124. Likewise, upon information and belief Postmasters McFall and Leonard specifically did not hire Ms. Allen for her applied positions in Metairie and Marrero in retaliation against her because of her prior EEO complaints against Mr. Porche. Ms. Allen was objectively qualified for the positions, but upon information and belief Mr. Porche communicated his bias and the existance of Ms. Allen's prior EEO complaints to McFall, Leonard, and Field Recruiter Segura. McFall himelf later admitted to Ms. Allen that he was aware of her EEO complaints and did not want to "get involved," and Ms. Segura admitted to Ms. Allen the impression that Allen was "at war" with USPS because of her EEO complaints.

125. Upon information and belief, Ms. Allen would not have been terminated from USPS, and would have been hired for each position that she had applied for, but-for her prior, protected EEO activity.

126. Accordingly, the USPS, through Postmaster General Brennan, is liable to Ms. Allen for all statutory and equitable damages caused by their illegal employment discrimination, including lost back wages, lost future wages, and specific compensatory damages.

**C.   Liability for Ms. Allen's Reasonable Attorney's Fees and Costs under the Equal Access to Justice Act Against the United States Postal Service through its Chief Executive, Postmaster General Megan J. Brennan**

127. The Fifth Circuit specifically authorizes a prevailing federal-employee plaintiff in an ADEA case against the United States to recover his or her attorney's fees and costs pursuant to the Equal Access to Justice Act codified at 28 U.S.C. § 2412(b). *Boehms v. Crowell*, 234 F.3d 30 (5th Cir. 2000).

128. Accordingly, should Ms. Allen prevail in this case against USPS, then USPS, through Postmaster General Brennan, is liable to Ms. Allen for her reasonable attorney's fees and costs

incurred in the matter.

## JURY DEMAND

Ms. Allen demands a trial by jury on all issues and causes of action in this matter.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Anastasia Nedd Allen prays that her complaint be deemed good and sufficient; that it summons be served upon defendant Postmaster General Megan J. Brennan in her official capacity; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant declaring that defendant did intentionally discriminate and retaliate against plaintiff based on her age and prior EEO activity, an injunction prohibiting the defendant from engaging in future unlawful practices based on age and retaliation, and for all damages and equitable relief due to plaintiff, including back wages, reinstatement or front wages, specific compensatory damages, reasonable attorney's fees and litigation costs, and all other appropriate, equitable relief.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Counsel for Anastasia Allen*