UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANASTASIA NEDD ALLEN     CIVIL ACTION

VERSUS     NO. 20-304

UNITED STATES POSTAL SERVICE     SECTION M (5)

## ORDER & REASONS

Before the Court is a motion by defendant the United States Postal Service ("USPS") to enforce settlement.[1] Plaintiff Anastasia Nedd Allen responds in opposition.[2] On July 15, 2021, the Court held an evidentiary hearing at which it received testimony from Allen's former counsel, Kevin Vogeltanz; Allen; and her former shop steward, Glenn Webster.[3] Having considered the parties' memoranda, the record, the testimony presented at the hearing, and the applicable law, the Court issues this Order & Reasons denying the USPS's motion to enforce settlement.

## I. BACKGROUND

Allen filed this action against USPS alleging employment discrimination and retaliation claims under the Age Discrimination in Employment Act ("ADEA").[4] On April 12, 2021, the magistrate judge held a telephone settlement conference with the participation of Vogeltanz, appearing on Allen's behalf, and Assistant United States Attorney Mary Katherine Kaufman, appearing on behalf of USPS.[5] Allen did not participate directly in the telephone conference.[6] Rather, Vogeltanz would speak with the magistrate judge and Kaufman, and then call Allen to

---

[1] R. Doc. 26.
[2] R. Doc. 34.
[3] R. Doc. 55.
[4] R. Doc. 1.
[5] R. Doc. 27.
[6] Testimony of Vogeltanz and Allen.

discuss the progress of the negotiations.[7]  Webster participated in Allen's calls with Vogeltanz.[8]  Vogeltanz represented to the Court and Kaufman that he had authority to settle the case.[9]

USPS contends that a settlement was reached at the conference whereby it agreed to pay Allen $50,000 in exchange for her releasing her claims against USPS and agreeing not to apply for or accept employment or contract work with USPS or its subsidiaries or related entities, including the USPS Office of Inspector General ("OIG").[10]  The magistrate judge was unable to contact a court reporter, so the parties agreed to reconvene the next day to put the settlement on the record.[11]  Later in the afternoon of April 12, 2021, at 3:26 p.m., Vogeltanz emailed Kaufman and recited the material terms of the settlement, as follows:

> 1. Full release of all of Ms. Allen's current claims, both brought and which could have been brought, against defendant for a total settlement payment of $50,000.
>
> 2. Ms. Allen's agreement to never apply for nor [*sic*] accept either employment or contract work with USPS (including its subsidiary or related entities, such as USPS Office of Inspector General).  The parties agreed that this prohibition does not restrict Ms. Allen from working for any of USPS customer's [*sic*] (we specifically discussed Amazon, Inc.) and Ms. Allen remains free to apply to federal agencies other than USPS.[12]

Kaufman replied confirming the terms of settlement and providing the language to be included in the written settlement agreement regarding Allen's agreement not to seek or accept employment with USPS in the future, which was:[13]

> Plaintiff agrees that she will neither seek nor accept employment with, reinstatement with, or transfer to the Postal Service or any of its associated or related entities as an employee or contractor of any type.  Should plaintiff seek to transfer or apply to work for the Postal Service or other entities in the future, this Agreement shall act as an immediate, irrevocable and voluntary withdrawal of that application or transfer request.  Should plaintiff be employed by the Postal Service

---

[7] *Id.*
[8] Testimony of Allen and Webster.
[9] Testimony of Vogeltanz.
[10] R. Docs. 26-1 at 2; 26-3.
[11] R. Doc. 26-1 at 2.
[12] R. Doc. 26-3.
[13] R. Doc. 26-4.

in the future, this Agreement shall act as an immediate, irrevocable and voluntary resignation. There is no time limit on the prohibition against plaintiff seeking or accepting employment with the Postal Service.

On April 13, 2021, at 10:23 a.m., Vogeltanz emailed Kaufman and the magistrate judge stating that, although Allen was not withdrawing from the settlement agreement, she needed more time to consider it before putting it on the record.[14] Then, on April 15, 2021, when the parties were supposed to put the settlement on the record, Vogeltanz emailed Kaufman and the magistrate judge to inform them that Allen did not intend to go forward with the settlement.[15] The magistrate judge discussed the issue with Allen, but on April 19, 2021, Vogeltanz informed Kaufman and the magistrate judge via email that Allen did not agree with the settlement and would not consummate it.[16]

Consequently, USPS filed the instant motion arguing that the settlement agreement is valid and enforceable under federal law.[17] USPS contends that Allen authorized Vogeltanz to enter into the settlement and that he confirmed Allen's agreement orally at the conference and then in writing via email.[18] In opposition, Allen argues that Vogeltanz did not have authority to enter into the settlement agreement.[19] According to Allen, she authorized Vogeltanz to settle the case for $56,000 coupled with an agreement not to work for USPS, but she did not authorize a settlement for $50,000 or agree to refrain from seeking employment with OIG.[20] Allen asserts that Webster was present during her conversations with Vogeltanz about settlement.[21] Hence, Allen maintains

---

[14] R. Doc. 26-5.
[15] R. Doc. 26-6.
[16] R. Doc. 26-10.
[17] R. Doc. 26. USPS also argues that the settlement agreement would be valid under Louisiana law if it were applicable, which it is not. *Id.*
[18] R. Doc. 26-1.
[19] R. Doc. 34.
[20] *Id.* at 4.
[21] *Id.*

that there is no settlement agreement to enforce because Vogeltanz lacked authority to bind her to the putative agreement set out in the email exchange between Vogeltanz and Kaufman.[22]

USPS subpoenaed Vogeltanz to testify at the hearing on the motion to enforce settlement.[23] Vogeltanz testified that he represented to the magistrate judge and Kaufman that he had authority to settle the case because Allen had instructed him in a telephone conversation to accept USPS's final offer, as relayed by the magistrate judge, contingent upon a side agreement between Allen and Vogeltanz regarding Vogeltanz's fees.[24] The side agreement involved Vogeltanz reducing his fees by $6,000 to allow USPS's offer of $50,000 to have the same bottom-line economic outcome for his client as Allen's offer to settle for $56,000 without the side agreement.[25] In this way, Vogeltanz thought he had Allen's authority to accept USPS's offer. Thus, he called the magistrate judge and accepted USPS's final settlement offer of $50,000 in exchange for Allen's dismissing the case and agreeing never again to work for USPS or its subsidiaries or affiliates.[26] Vogeltanz testified that the OIG was specifically discussed as an entity for which Allen would be prohibited from working, and that he informed Allen of all of the proposed terms, to which she agreed subject to the side agreement regarding his fees.[27] Vogeltanz admitted that this authority was not memorialized in writing, either text message or email.[28] Rather, the last pre-agreement writing he has from Allen is a text message at 1:45 p.m. in which Allen agreed that Vogeltanz could offer to settle the case for $56,000 in exchange for her agreement not to work for USPS.[29] The magistrate judge informed Vogeltanz that USPS rejected the offer, but would settle for $50,000, with the

---

[22] *Id.* at 5-11.
[23] R. Docs. 42 & 47.
[24] Testimony of Vogeltanz.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

4

USPS/OIG no-rehire restriction.[30] Vogeltanz testified that he did not ask Allen to confirm her agreement to this counteroffer in writing, but that to his knowledge there were no material differences in the no-rehire provision, and he reduced his attorney's fees by $6,000 so that Allen would receive the same amount of money she would have if the case had settled for $56,000.[31] Vogeltanz further testified that he discussed with Allen the OIG restriction and she consented to it.[32] After the settlement conference with the magistrate judge, Vogeltanz sent an email to Allen confirming the terms of the settlement and their side agreement regarding his fees.[33] An hour later, Allen first expressed to Vogeltanz that she had reservations about going forward with settlement.[34]

Allen's recollection differs from Vogeltanz. Allen testified that she authorized Vogeltanz to offer to USPS that it pay her $56,000 in exchange for her dismissing the suit and agreeing not to work for USPS.[35] She claims that OIG was never discussed and that she did not consent to refrain from seeking work at OIG.[36] Vogeltanz then left the telephone call with Allen and Webster, so he could join the telephone settlement conference with the magistrate judge. According to Allen, Vogeltanz later called her back and said that the case was settled for $50,000 and that she would not work for USPS or OIG.[37] At that point, Webster said that OIG was not part of USPS so it should not be included as an entity for which Allen would be prohibited from working.[38] Allen told Vogeltanz that she did not agree to a $50,000 settlement and not to work for OIG.[39] Allen testified that Vogeltanz said the $50,000 would work out because he would reduce his fee

---

[30] *Id.*
[31] *Id.*; *see also* Exhibit P2.
[32] Testimony of Vogeltanz.
[33] Exhibit P2.
[34] Testimony of Vogeltanz.
[35] Testimony of Allen.
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*

by $6,000 so she would get the same amount of money as if the case had settled for $56,000.[40] Allen said she did not agree to that arrangement.[41] She was upset and called her husband.[42] Allen then called Vogeltanz back and said she did not agree to the settlement, but he said it was too late.[43] Allen unequivocally testified that she did not authorize Vogeltanz to settle her case for $50,000 with the restriction that she not work for USPS and OIG.[44]

Webster testified that the last offer Allen authorized Vogeltanz to make was for $56,000 and the condition that she would not work for USPS in the future.[45] Thereafter, Vogeltanz relayed that USPS offered $50,000 with the condition that Allen would not work for USPS or any related agency, including OIG.[46] Webster testified that he believed Vogeltanz did not understand the difference between OIG and USPS and that he did not think Allen should be prohibited from working for OIG.[47] He testified that Allen was distraught by this offer and did not authorize a settlement on such terms.[48] Webster also testified that Allen accepted Vogeltanz's proposal to reduce his fee by $6,000, as part of an offer, but not a final settlement.[49]

## II. LAW & ANALYSIS

District courts have "inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). Federal law governs questions regarding the enforceability or validity of a purported settlement agreement when "the substantive rights and liabilities of the parties derive from federal

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] Testimony of Webster.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

law." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Here, Allen's ADEA claims arise under federal law. Thus, federal common law applies to determine the enforceability of the purported settlement.

Under federal law, a settlement agreement is a contract. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). A binding contract, or settlement agreement, "exists only when there is a manifestation of mutual assent, which ordinarily takes the form of an offer and its acceptance." *McDonald v. Kansas City S. Ry. Co.*, 2017 WL 1709353, at *4 (E.D. La. May 3, 2017). Generally, whether the parties intended to and did enter into a contract is an issue of fact. *Id.* However, where "the parties' writings are purported to embody a binding agreement, then the question of whether an offer was accepted and a contract was formed is primarily a question of law for the court to decide." *Id.* (quotation omitted).

Moreover, under federal law, an attorney of record is "presumed to have authority to compromise and settle litigation of his client." *Quesada v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012) (quoting *Mid-South*, 733 F.2d at 390). A party who intends to challenge the enforcement of a settlement agreement negotiated on her behalf bears the burden of establishing some basis that her counsel of record lacked the requisite authority to enter into the agreement. *Harmon v. Journal Publ'g Co.*, 476 F. App'x 756, 758 (5th Cir. 2012). "The mere fact that a party [disputing] a settlement informs its attorney, after an agreement has been reached, that he was not authorized to settle does not 'affirmatively prove' that the attorney had no authority, actual or apparent." *Lion InvestBanc, L.L.C. v. Kennedy*, 2004 WL 1597342, at *5 (E.D. La. July 16, 2004). The party must present an affirmative basis to overcome the presumption that the attorney of record was authorized to enter into the agreement.

7

Here, Vogeltanz, Allen, and Webster all testified forthrightly and earnestly as to their respective recollections of what occurred during the settlement conference and their telephone conversations concerning settlement. It is evident that Vogeltanz thought he had Allen's authority to settle the case for $50,000 with the proposed no re-hire restrictions (which included OIG),[50] whereas Allen firmly believes she never gave Vogeltanz such authority. The last writing between the attorney and client shows that Vogeltanz had authority to settle the matter for $56,000 with the restriction that Allen not work for USPS. There is no writing, one way or the other, proving whether Allen authorized Vogeltanz to accept the offer of $50,000 and the restriction that she not work for USPS and OIG. Webster's testimony supports Allen's assertion that Vogeltanz lacked authority to settle the case on those terms. Allen's position is supported to some degree by her and Webster's testimony about how upset she was that Vogeltanz had settled the case for the terms he relayed. Balancing the evidence, the scales tip ever so slightly to Allen's side. Thus, the Court finds that Vogeltanz lacked authority to enter into the settlement sought to be enforced, and no settlement agreement was reached. It necessarily follows, then, and the Court so finds, that Allen and Vogeltanz never reached an agreement to reduce his fees since the proposal to do so was predicated upon a final settlement agreement.

Finally, let it be said that neither the magistrate judge nor Kaufman could have known about the uncertainty concerning Vogeltanz's authority to settle the case. They only knew what Vogeltanz professed and what he professed he sincerely believed. Thus, USPS's effort to enforce settlement is wholly understandable. After all, settlement agreements "are highly favored and will be upheld whenever possible." *Saeed v. Kamboj*, 2019 WL 3526710, at *4 (E.D. La. June 21,

---

[50] As a matter of law, any agreement to refrain from working for USPS arguably included OIG as an affiliate of USPS, notwithstanding the adamant testimony of Allen and Webster that no agreement was reached concerning OIG. The Court need not and does not resolve this question, however, given the grounds for its disposition of the motion.

2019). Perhaps the case ought to have settled. But on this evidentiary record, the Court must reluctantly conclude that it has yet to do so.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that USPS's motion to enforce settlement (R. Doc. 26) is DENIED.

IT IS FURTHER ORDERED that a scheduling conference will be held on August 11, 2021, at 11:00 a.m., by telephone for the purpose of scheduling a pretrial conference and trial on the merits, along with all pretrial deadlines. The Court will be represented at the teleconference by its Case Manager. <u>All parties are to call into the conference call at (877) 873-8018, Access Co</u>de: 2994682.

New Orleans, Louisiana, this 21st day of July, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE