# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| ANASTASIA NEDD ALLEN | * | CASE NUMBER: 20-CV-304 |
| | * | |
| VERSUS | * | JUDGE: ASHE |
| | * | |
| LOUIS DEJOY, | * | MAGISTRATE: NORTH |
| UNITED STATES | * | |
| POSTMASTER GENERAL | * | |

**************************************************************************

## MEMORANDUM IN OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

## I.   FACTUAL BACKGROUND

The United States Postal Service ("USPS") first hired Anastasia Allen ("Allen") on or about April 30, 2018 for the position of city carrier assistant at the USPS post office station located at 1300 Florida Boulevard in New Orleans, Louisiana ("Central Station").[1] Allen remained continuously employed with USPS until the date of her first termination around July 18, 2018, when she was on leave for her wedding. On August 22, 2018, Allen timely initiated an EEO contact regarding her first termination (EEO Case No. 4G-700-0163-18), alleging that her decision-maker, USPS Station Manager Joseph Porche ("Porche"), terminated her employment because of her age, marital status, disability, and related hostile work environment, *inter alia*.[2] The instant claim involves Allen's rehire by the USPS and subsequent termination for pretextual reasons, involving Porche and other managers poisoned against Allen by Porche. Allen has alleged she was discriminated against and terminated because of her age, and USPS employees retaliated against her for bringing her first EEO claim by using it as justification to deny her subsequent employment.

---

[1] Rec. Doc. 1 at ¶ 7.
[2] Rec. Doc. 1 at ¶¶ 8-9.

As proof, Plaintiff has attached her own declaration and that of Glenn Webster, who was also a fact witness to some of the pretext concerning Plaintiff's probationary time.[3]  Plaintiff submits that further discovery is needed to corroborate this evidence as discovery cutoff is still months away. On November 20, 2018, USPS and Allen settled her first EEO complaint.[4] The settlement, attached to Defendant's motion for summary judgment, provides clear and unambiguous terms, specifically that the agreement "is reached on a non-precedential basis and is not to be cited or referenced by either party."[5] Allen's second employment period began on December 8, 2018 when Porche reinstated her as a City Carrier Assistant at the Central Station, subject to a renewed 90-day probationary period.[6]

Nevertheless, during and after her second employment term, the USPS continued to retaliate against Allen for this very termination and settlement. The USPS used the first termination and Allen's compliance with its confidentiality provision as a pretextual, retaliatory reason to not rehire her. The USP argues that she was not "re-hirable" because she allegedly did not disclose that she had been previously terminated by the USPS in a pre-hire interview. The USPS cannot have it both ways. Marrero postmaster Alicia Leonard stated in her EEO affidavit:

> I told her I would speak to her previous Manager and her previous Supervisor which she confirmed was Joe Porche and Charlotte Lagrue. I also received her Form 50 which showed a negative release from her previous assignment. When I spoke to the [S]upervisor and Manager they explained to me that she was a difficult employee who challenged everything they would tell her as it relates to daily instructions and identified work deficiencies. [...] **The previous Form 50's showed she had been separated twice for unsatisfactory performance.**[7]

Metairie postmaster Matthew McFall also swore in an affidavit that he did not re-hire her because

---

[3] *See* Exhibit 1, generally, Affidavit of Anastasia Allen. *See* Exhibit 2, generally, Declaration of Glenn Webster.
[4] R. Doc. 59-5.
[5] *Id.*
[6] *Id.*
[7] Exhibit 3, excerpt from EEO Affidavit of Alicia Leonard, No. 4G-700-0049-19, Bates 417-8. (**Emphasis Supplied**).

he learned that "in fact she had been terminated twice by the post office,"[8] referencing the termination that resulted in the original EEO case and using it as a discriminatory/retaliatory reason to not hire Allen.

During the second period, it was clear to Allen that the settlement had been confected by the USPS through Porche to find pretextual justifications to terminate her in a more ostensibly justifiable and defensible manner. Each allegation by the USPS regarding Allen's termination can be rebutted by specific facts, including, most importantly, that Allen was never properly trained as a carrier, and that her evaluation periods were backdated by her supervisors to create the illusion that she had been given sufficient time and instruction, among other reasons for her termination.[9] Allen's own testimony regarding the discrimination and retaliation she endured is the most authentic narration of these events. See Paragraph's 1-10 of her Affidavit attached as Exhibit 1.

On January 6, 2019, prior to her second termination, Allen initiated another informal EEO contact (EEO Case No. 4G-700-0049-19) regarding an adverse workplace investigation conducted against her at Central Station, specifically that the investigation was motivated by Allen's age and in retaliation against her for her previous EEO claim.[10]

On February 26, 2019, the USPS terminated Allen's employment for the second time. Supervisor Charlotte Lagrue terminated Allen with "RMO"[11] involvement from Porche, due to "[f]ailure to perform work which meets the expectation of the position [;] [f]ailed [sic.] to accomplish work in an efficient and timely manner […] [f]ailed to work at a sufficient speed."[12] Sometime between February 26, 2019 and March 11, 2019, Allen timely included in that informal

---

[8] Exhibit 4, Excerpt from EEO Affidavit of Matthew McFall, EEO Case No. 4G-700-0049-19, Bates no. 00389.
[9] *Id.*
[10] R. Doc. 1 at ¶ 12.
[11] Exhibit 5 Excerpt from EEO Affidavit of Charlotte Lagrue, EEO Case No. 4G-700-0049-19, Bates no. 00327.
[12] *Id.* at Bates no. 328.

complaint an additional claim, alleging that she was terminated because of her age and in retaliation for her prior, protected EEO complaint.[13]

On March 19, 2019, Allen timely filed a Complaint of Discrimination in the Postal Service alleging that USPS, through the actions of its agents and employees, Station Manager Porche and Supervisors Charlotte Lagrue and Bianca Martin, terminated Allen because of her age and in retaliation for her prior EEO activity.[14] On April 11, 2019, the USPS accepted these claims for investigation.[15] On May 28, 2019, Allen amended her EEO complaint to assert that she was not selected for hire for positions at USPS stations in Metairie and Marrero, Louisiana based on her age and in retaliation for her prior EEO activity: (1) Job Posting No. 10242872 in Metairie, Louisiana around February 26, 2019; (2) Job Posting No. 10292968 in Marrero, Louisiana around May 8, 2019; and (3) Job Posting No. 10292967 in Metairie, Louisiana around May 21, 2019.[16]

On October 30, 2019, USPS rendered a final agency determination and dismissed her case.[17] Aggrieved by the USPS's determination, Allen timely filed this judicial complaint on January 28, 2020, alleging age discrimination and retaliation for her initial EEO complaint.[18] Although settlement was discussed starting in March of 2021, it was never reached. Consequently, Defendant attempted to enforce the "settlement" by motion filed on April 21, 2021.[19]

Undersigned counsel enrolled on May 24, 2021, and defended the motion to enforce settlement which was denied on July 21, 2021.[20] On August 16, 2021, a scheduling order was filed setting the jury trial on May 9, 2022, with a discovery cutoff of April 8, 2022. [21]

---

[13] R. Doc. 1 at ¶ 14.
[14] *Id.* at ¶ 16.
[15] *Id.* at ¶ 17.
[16] *Id.* at ¶ 18.
[17] R. Doc. 59-15.
[18] *See* R. Doc. 1, generally.
[19] *See* R. Doc. 26.
[20] R. Doc. 56.
[21] R. Doc. 58.

Defendant filed the instant motion for summary judgment on December 21, 2021.[22]

## II.  LAW AND ARGUMENT

### A.  Summary Judgment Standard and Procedural Arguments

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a).[23] Accordingly, in reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). The evidence in the summary-judgment record is viewed in the light most favorable to the non-movant. *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 390 (5th Cir. 2017).  In other words, summary judgment is improper if a reasonable factfinder could find in favor of the non-movant.[24] Moreover, when assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party; however, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[25]

In addition to raising substantive arguments alleging that Plaintiff cannot carry her burden of proof, the defendant USPS has also raised two procedural arguments or bars through summary

---

[22] R. Doc. 59.
[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[24] *Id.* at 394 (reversing summary judgment because factual disputes resolved favorably for the non-movant constituted a colorable claim).
[25] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, Fed. Prac. and Proc. Civ.2d § 2738 (1983)).

judgment: (1) that Plaintiff failed to name the proper defendant[26] and that (2) Plaintiff failed to exhaust administrative remedies.[27]

As the Fifth Circuit has opined, "the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII 'was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship.'" *Parker v. State of Louisiana Dept. of Educ. Special School Dist.*, 323 Fed.Appx. 321, 329 (5th Cir. 2009) (*quoting Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir.1970)). Thus, Plaintiff addresses each of these issues in this framework:

### 1. Plaintiff named the proper party defendant.

Defendant argues erroneously that Plaintiff named the United States Postal Service as the party defendant. Despite Defendant's assertions to the contrary, Plaintiff named the proper party defendant in her complaint and so her claims should not be dismissed on this basis. The only property party defendant in a Title VII action against the Postal Service is the Postmaster General. *Lamb v. United States Postal Service*, 852 F.2d 845, 846–47 (5th Cir.1988) (citing *Dacus v. United States Postal Service*, 841 F.2d 395 (5th Cir.1988); *Newbold v. United States Postal Service*, 614 F.2d 46, 47 (5th Cir.), cert. denied, 449 U.S. 878 (1980)). A minimal amount of investigation on the part of Defendant would have revealed that Plaintiff, in her original complaint, correctly named Megan J. Brennan as defendant, solely in Ms. Brennan's official capacity as the Postmaster General of the United States Postal Service., and the statutory head of the United States Postal Service (See R. Doc. 1, p. 1).[28] Defendant's only support for this feeble argument seems to be the

---

[26] R. Doc. 59-1, p. 10.
[27] R. Doc. 59-1, p. 21.
[28] Ms. Brennan served as Postmaster General for the USPS from February 1, 2015 until June 15, 2020. *See* https://about.usps.com/who-we-are/postal-history/list-of-postmasters-general.htm. Plaintiff filed her complaint on January 28, 2020 during Ms. Brennan's tenure as Postmaster General. Thus, Plaintiff not only named the Postmaster General as the proper party defendant in her lawsuit, but she also correctly named the particular person serving as

appearance of the "United States Postal Service" or "USPS" as Defendant in the case caption and body of various orders[29] and pleadings.[30] Regardless of the captions utilized by the Court and the parties, Plaintiff properly named the then-head of the USPS, Postmaster General Megan Brennan as Defendant in the instant litigation and alleged liability by the USPS through the Postmaster.[31] Defendant's argument completely lacks merit and is not grounds for dismissal of Plaintiff's claims.

### 2. Plaintiff's claims have been exhausted.

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c), permits most federal employees to seek relief from proscribed discriminatory employment practices in Federal District Court. As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.2006).[32] The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally. *Id.*[33] The Fifth Circuit interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination."[34] As the Fifth Circuit opined in *Pacheo*, "[w]e engage in fact-intensive

---

Postmaster General at the time.

[29] *See* R. Docs. 9, 24, 33, and 41.
[30] *See* R. Docs. 36, 38, 39, 42, 43, 45, 46, 49, and 53.
[31] *See* Complaint, R. Doc. 1 at ¶ 2; ¶¶ 121-122; ¶¶ 127-128.
[32] *Citing, inter alia, Brown v. General Servs. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976); *Martinez v. Dep't. of U.S. Army*, 317 F.3d 511 (5th Cir.2003); 29 C.F.R. § 1614.105–107 (2005). The 5th Circuit reviews de novo a district court's determination of whether the exhaustion requirement is satisfied. *See Martinez,* 317 F.3d at 512; *Randel v. Dep't. of U.S. Navy*, 157 F.3d 392, 395 (5th Cir.1998).
[33] *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 463 (5th Cir.1970); *Fellows v. Universal Restaurants, Inc*., 701 F.2d 447, 451 (5th Cir.1983).
[34] *Id. citing Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 463-466 (5th Cir.1970).

analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." (*Internal citation omitted*).

So, for example, in *Fellows v. Universal Restaurants, Inc*., 701 F.2d 447, 447-449 (5th Cir.1983), the Fifth Circuit held that an entire class of plaintiffs had exhausted their administrative remedies, even though the administrative charge complained only of individual discrimination. Later, in *Gamble v. Birmingham Southern Railroad Co.*, 514 F.2d 678 (5th Cir.1975), this Court held that black railroad workers who had filed an administrative charge complaining of discrimination in promotions to conductor had also exhausted their administrative remedies with respect to claims of discrimination in promotions to higher supervisory position.

Defendant has objected to reference to the earlier settled discrimination case, both as a claim and simply as evidence of discrimination. First, reviewing both the Defendant's declarations and the EEO record, it should be noted that many of the USPS witnesses—Porché, McFall, Lagrue—themselves make reference to this termination, and used to justify Plaintiff's non-hire and to argue against her suitability as a candidate. Therefore, by referencing this prior decision internally, the USPS has arguably violated the settlement agreement itself, thereby erasing the distinction between the acts that occurred prior to the first settlement and the acts that occurred after, and opening the door to inquiry into the facts of the first claim.[35] Because Plaintiff's claim involves this referenced settlement agreement, and because Plaintiff has brought a retaliation claim for this initial settlement, it would be impossible for Plaintiff to prove her claims without reference to this earlier claim. Therefore, Plaintiff requests the Court view her complaint broadly and permit all claims to proceed as pled, with reference to incidents occurring prior to December 8, 2018, as

---

[35] Plaintiff needs additional discovery to depose the declarants in the USPS's supporting declarations to clarify their vague statements regarding the earlier adverse action. Plaintiff foresees filing a motion to address the USPS's breach of this agreement and any and all ramifications.

being relevant to proving intent in her retaliation and discrimination claims.[36]

### B. <u>Objection to Summary Judgment Evidence</u>

A court can strike summary-judgment evidence when the evidence is inadmissible, speculative, conclusory, improperly authenticated, or otherwise incompetent.[37] Furthermore, a court can strike a declaration if it is not based on personal knowledge, if it sets out facts that would not be admissible in evidence, or if it does not show that the declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The court should strike any portions of a declaration that do not meet the standards of Federal Rule of Civil Procedure 56(c)(4). *See Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530–31 (5th Cir. 1992). "Rule 56(e) requires declarations offered in support of summary judgment to be based on personal knowledge."[38] Rule 602 of the Federal Rules of Evidence further requires a submitting party to lay a proper foundation that witnesses have personal knowledge of the matter about which they will testify. "[A] court may strike any affidavit that is not based on personal knowledge."[39] To demonstrate personal knowledge, an affidavit "must include enough factual support to show that the affiant possesses that knowledge." *Thomas v. Atmos Energy Corp.*, 223 Fed.Appx. 369, 374 (5th Cir. 2007).

Accordingly, attacks on the competency of evidence to support a summary judgment motion should be made in an objection under Rule 56(c)(2) of the Federal Rules of Civil Procedure rather than in a motion to strike, as motions to strike are not favored in modern summary judgment practice. *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515

---

[36] *See Buckley v. Mukasey*, 538 F.3d 306, 319 (4th Cir. 2008), cited below in the section dealing with retaliation, stands for the proposition that earlier settlements could be introduced as evidence of retaliatory intent.

[37] *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972); *Newport Elecs., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 208 (D. Conn. 2001).

[38] *Bright v. Ashcroft*, 259 F.Supp.2d 494, 498 (E.D. La. 2003) (*citing* Fed.R.Civ.P. 56(e); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992)).

[39] *Bright v. Ashcroft*, 259 F.Supp.2d 494, 498 (5th Cir. 2003) (*citing Akin*, 959 F.2d at 530; *CMS Indus., Inc. v. L.P.S. Int'l, Lt*d., 643 F.2d 289, 295 (5th Cir. 1981)).

(5th Cir. 2012). Rule 56(c)(2) permits a party to object to exhibits submitted with a motion for summary judgment when they "cannot be presented in a form that would be admissible in evidence."[40] "On a motion for summary judgment, the district court should disregard only those portions of an affidavit [or declaration] that are inadequate and consider the rest." [41]

Defendant has offered the affidavits of postal employees Joseph Porche (Rec. Doc. 59-4), Charlotte Lagrue (Rec. Doc. 59-16), Alisa Leonard (Rec. Doc. 59-10), Matthew McFall (Rec. Doc. 59-8), and Bianca Martin (Rec. Doc. 59-17) to show that Plaintiff has failed to make a prima facie case of discrimination and to establish the non-pretextual reasons for her termination.

The speciousness of the USPS summary judgment becomes apparent when the affidavits/declarations are scrutinized and considered against each other and the record, revealing the declarations to be mostly conclusions about ultimate issues that are devoid of supporting facts. As a prime example, the declaration of USPS supervisor Porche, *inter alia*, states Plaintiff could not accept "constructive criticism,"[42] yet, despite this statement being repeated by Porche, Leonard, Lagrue, and others in their EEOC affidavits and declarations, the record is devoid of evidence of that Plaintiff received and disregarded any specific constructive criticism. Plaintiff testified by affidavit, and the record shows, that she never received any constructive criticism.[43] Also, Porche testifies numerous times to Plaintiff's performance, yet Plaintiff has rebutted this testimony by testifying herself that even though Porche was her supervisor, he did not personally supervise her working or her job performance but relied upon the statements of others.[44]

---

[40] However, Rule 56(c)(1)(A) & (4) of the Federal Rules of Civil Procedure is such an exception, as it permits affidavits and declarations to be used by the Court in determining a motion for summary judgment when the affidavit or declaration is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

[41] *Akin v. Q-L Invs.*, 959 F.2d 521, 531 (5th Cir. 1992).

[42] *See* R. Doc. 59-4, ¶ 12.

[43] Exhibit 1, p. 2, ¶ A.4.

[44] *See* Exhibit 1, ¶ B.5, "I never received feedback from Joe Porche, my supervisor Charlotte Lagrue or Bianca Martin when it came to my performance. To my knowledge, Joe Porche did not observe me performing my duties and was

Therefore, without setting forth specific examples of poor work performance or the constructive criticism that Plaintiff disregarded, the testimony regarding this non-pretextual ground is vague and conclusory and seems more like fabricated pretext. Such evidence cannot aid the trier of fact. In fact, in Leonard's declaration, the USPS goes through pains to delineate several incidents that were beyond Plaintiff's control. Occasions where Allen may have suffered time impediments to her performance are specifically NOT grounds for terminating her. The Court should draw the same conclusion as Plaintiff, which is that removing these "specific incidents" (supplied to explain Plaintiff's termination) leave only very vague, obviously pre-textual reasons for termination, each of which are beset with numerous issues of material fact sufficient that a reasonable jury could find for Plaintiff.[45]

Compare these vague, conclusory observations with the Plaintiff's own testimony from her Affidavit, Exhibit "1", Paragraphs B.5 and B.6:

> 5. I never received feedback from Joe Porche, my supervisor Charlotte Lagrue or Bianca Martin when it came to my performance. To my knowledge, Joe Porche did not observe me performing my duties and was not present at my evaluations, therefore he could not have the personal knowledge expressed in his declaration, R. Doc. 59-4, p. 1, ¶ 9.

> 6. I was never advised of my deficiencies by Joe Porche, my Supervisor Charlotte Lagrue or Bianca Martin nor was ever told that I had any. They did not provide me with constructive criticism. Porche did not advise me, nor does he have firsthand information.

Just as the declarations presented rely on facts that could not have been observed, and therefore, lack foundation, these declarations also rely on conclusory statements as the sole non-pretextual reasons to terminate Plaintiff. This testimony is not restricted to Porche but is present in the declaration of Lagrue (R. Doc 59-16, ¶ 13), "Plaintiff did not take constructive criticism very well," and Bianca Martin (R. Doc. 59-17, ¶10), "Plaintiff was informed her work performance was not

---

not present at my evaluations, therefore he could not have the personal knowledge expressed in his declaration, R. Doc. 59-4, p. 1, ¶ 9."
[45] *See* R. Doc. 59-16, ¶ 17, *et seq.*

meeting expectations," *inter alia*. We are not told what specific actions Plaintiff was disciplined for and what, if any, specific suggestions were made to her for her improvement. Only in Lagrue's declaration are we supplied with specific allegations, yet Lagrue then testifies that each example of these violations, that were established by testimony, were NOT the reason for Plaintiff's termination.[46] In fact, in the entire six-hundred-page EEO record, including all the affidavits of Allen's supervisors, there is no document which proves that Allen was given any "constructive criticism," that is, criticism that advised Allen of ameliorative actions she should take to improve her performance. Also, a comparison of these declarations with that of Webster, who testifies that most of the cited reasons for terminating Plaintiff were not born out by the documentary evidence, shows that the supervisors involved did not, at the time they were terminating Plaintiff, document sufficient deficiencies to terminate her employment under post office regulations.[47]

Plaintiff would therefore ask for the Declarations of Porche, Lagrue, Leonard, and Martin to be stricken as they contain conclusory statements, speculation, and statements not based on personal knowledge. Alternatively, Plaintiff would submit this to the Court under Rule 54(d)(4) as good cause to continue the matter to take the depositions of the most important declarants to test the specificity of these assertions.[48]

### C.  Burden of Proof, *McDonell-Douglas* Burden Shifting Analysis

Plaintiff now turns to address the bulk of defendant USPS's summary judgment argument involving the merits of her Title VII and retaliation claims. Importantly, the Age Discrimination in Employment Act (ADEA) proscribes an employer's "discharg[ing] any individual" because of

---

[46] *See* R. Doc. 59-16, ¶¶ 4-10, *but see* ¶¶ 19, *et seq*.

[47] See generally, Exhibit 2, Declaration of Glenn E. Webster.

[48] While Plaintiff is aware that the case she has cited holds that declarations should only be stricken if they are specifically invalidated, paragraph for paragraph, to undertake such a task would outstrip the space constraints of this memorandum and would require a level of proof beyond summary, indicating that there are indeed outstanding issues of material fact. Foreseeably, the easiest and most direct manner of testing the foundation and personal knowledge of these affiants is to allow Plaintiff the opportunity to take depositions.

his or her age. 29 U.S.C. § 623(a)(1). Under the ADEA, a plaintiff must demonstrate she would not have been terminated but for the alleged discrimination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). To establish an ADEA claim, a plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

Toward that end, the more than well-known *McDonnell-Douglas* burden-shifting analysis is employed. A plaintiff who establishes a prima facie case of age discrimination "raises an inference of unlawful discrimination". *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). The well-established test adopted in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to claims brought under Title VII. To establish a *prima facie* case of discrimination, a plaintiff must demonstrate that she: (1) is a member of a protected class; (2) is qualified for the position from which she was discharged; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated individuals who were not members of her protected class. *Parker*, 323 Fed.Appx. at 327 (citing *Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 576 (5th Cir.2003) and *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512–13 (5th Cir.2001)).[49] As a result, [t]he burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action. The defendant may meet this burden by presenting evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the

---

[49] The *Gross* Court clarified: "[T]he Court has not definitely decided whether the evidentiary framework of [McDonnell Douglass], utilized in Title VII cases is appropriate in the ADEA context." *Gross*, 557 U.S. at 175-76 n.2. Nonetheless, the Fifth Circuit continues to apply the *McDonnell-Douglas* framework to ADEA claims after Gross. *See, e.g., Holliday v. Commonwealth Brands, Inc*., 483 Fed.Appx. 917, 921 (5th Cir. 2012); *Manaway v. Med. Ctr. of Southeast Tex.*, 430 Fed.Appx. 317, 321 (5th Cir. 2011); *Moss v. BMC Software, Inc.,* 610 F.3d 917, 922-23 (5th Cir. 2010); *Jackson v. Western Packaging Corp*., 602 F.3d 374, 378 (5th Cir. 2010) **("[W]e are bound by our circuit precedent applying McDonnell Douglas to age discrimination cases.**") (**Emphasis Supplied**).

employment action." *Id*. (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the defendant meets that burden, "the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet [her] ultimate burden of persuasion on the issue of intentional discrimination". *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).[50]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (*internal quotation omitted*). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[51] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[52] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[53]

---

[50] Restated by another court: "[f]irst, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." (McDonnell, supra.), at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*, at 804, 93 S.Ct. at 1825.

[51] *See Celotex*, 477 U.S. at 325.

[52] *See Id.* at 324.

[53] *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

**D. Title VII Retaliation Claim and Exhaustion of Claims**

To prevail in a Title VII retaliation case, a plaintiff must ultimately prove that but for his employer's desire to retaliate he would not have suffered an adverse employment action. At the prima facie stage, "a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Moore v. Brennan*, 794 Fed.Appx. 374, 377 (5th Cir 2019).[54] "The combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment."[55]

In its Motion for Summary Judgment, Defendant argues that "all factual allegations prior to December 8, 2019 are time barred […] [f]urther, they are irrelevant and moot because those allegations resulted in settlement."[56] However, this reasoning is based on vague and conclusory statements in the declarations by Defendant's own employees that they did not consider Plaintiff's prior EEO complaints.[57] Regardless of the time period of the complaint, the evidence of the prior acts and EEO action are relevant to proving the discriminatory animus or intent, as one appellate court has noted about evidence of prior settlements. *See Buckley v. Mukasey*, 538 F.3d 306, 319 (4th Cir. 2008). In that case, the Fourth Circuit held that evidence of a prior civil rights litigation was "unquestionably ""[r]elevant"" within the meaning of Rule 401 […] [m]oreover, such evidence of other wrongs or acts is admissible under Rule 404(b), 'which allows evidence of other wrongs for purposes such as proof of motive and intent.' (intent of retaliatory or discriminatory motive) *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir.1992) (*en banc*) *See also*

---

element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (*quoting Celotex*, 477 U.S. at 332).

[54] *Citing Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir..2013) *Garcia v. Prof'l Contract Servs.*, Inc., 938 F.3d 236, 243 (5th Cir. 2019).

[55] *Id.*, citing *Shackelford v. Deloitte & Touche*, LLP, 190 F.3d 398, 409 (5th Cir. 1999).

[56] R. Doc. 59-1, p. 11.

[57] *See* R. Docs. 59-1, 59-4, 59-8, 59-10, 59-11, 59-16 and 59-17.

*Fisher v. Procter & Gamble Mfg. Co*., 613 F.2d 527, 540 (5th Cir. 1980).[58]

Because the Defendant has relied on reference to Plaintiff's prior EEO settlement in its own affidavits, declarations,[59] and reasons for terminating Plaintiff, it has opened the door to the relevance of the first EEO claims and any attendant facts.

## 1. The Record shows a Prima Facie Case of Age Discrimination and Retaliatory Firing.

With the burden in mind, Plaintiff turns to establishing the prima facie case: "[a] plaintiff establishes a *prima facie* case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Parker*, 323 Fed.Appx. at 327 (citing *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir.1996). The burden of establishing a prima facie case of disparate treatment is not onerous.[60] The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." [61]

The prima facie case in this instance is set forth in the EEO complaint and the attached declarations.[62] Plaintiff has testified in the form of an affidavit, Exhibit 1, as follows, along with testimony of witness, Glenn Webster, Exhibit 2, which provide firsthand accounts of discrimination and the pre-textual nature of Plaintiff's discharge. Additionally, Plaintiff's

---

[58] [D]etermining that where "prior practices were considered relevant to show independently actionable conduct occurring within the statutory period" and were not viewed "as constituting the actionable wrongs upon which relief was based," the district court did not err in taking those prior practices into consideration. *Id.*

[59] *See* R. Docs. 59-4, 59-8, 59-10, 59-11, 59-16 and 59-17.

[60] *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 251, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

[61] *Id.*, *citing, Teamsters v. United States*, 431 U.S. 324, 358, and n. 44, 97 S.Ct. 1843, 1866, n. 44, 52 L.Ed.2d 396 (1977).

[62] Although, Defendant has alleged that Plaintiff has not made her prima facie case, it has addressed many of her specific EEO claims by supplying allegedly non-pretextual reasons for her termination which would suggest some facetiousness in the bald denial of Plaintiff's bare claims and would suggest the prima facie case has been conceded or judicially admitted.

testimony is corroborated by her former shop steward, Charles Jackson, a USPS employee who will establish that Porche made age discriminatory comments to Allen on November 20, 2018. As Allen has testified in her affidavit,

> I asked Porche to not put me on another probationary period. Porche replied that he does not like to hire older workers because they tend to get hurt and go on restriction until they retire. He said he did not need another carrier with restrictions on his clock. He said this in my shop steward Charles Jacksons presence.[63]

Thus, Porche's discriminatory animus was revealed by his self-serving comment overheard by shop steward Charles Jackson. Because Charles Jackson is an employee of the USPS, Plaintiff has respected Defendant's request that all discovery requests should be made through the USPS, and a request for his deposition has been provided.

Plaintiff's claims are threefold: (1) in Case No. 4G-700-0049-19, Allen timely included in that informal process an additional claim regarding her second termination, alleging that, among other things, she was terminated because of her age and in retaliation against her for filing her prior, protected EEO complaint; (2) she was not hired for the positions applied for at Metairie Station (Job Posting Nos. 10242872 and 10292967); and (3) she was not hired for Marrero Station (Job Posting No. 10292968), because of her age and in retaliation against for her prior EEO activity.[64]

Allen states in her Affidavit at Paragraphs B.8 and B.10:

> 8. As indicated on my PS Form 50 of March 22, 2019, I was terminated from the USPS, not separated as Porche states. Porche and Lagrue set me up to fail so Porche could terminate me for poor performance. They did not train me properly, did not advise me of any deficiencies in my job performance, did not evaluate me properly or provide feedback, and did not allow me time to learn my craft. They had me follow their instructions, whether those instructions were right or wrong, or resulted in deficiencies like expanded street time. They altered my clock rings to reflect street time rather than actual office time, and they moved me on the clock to other crafts (i.e., customer service, collections, clerk functions) which I have never worked. They would hide mail and parcels from me before I left on my

---

[63] Exhibit 2, pp. 3-4, ¶ B.10.
[64] R. Doc. 1 at ¶ 18.

route and then would call me back claiming that I left mail/parcels. I did not leave my scanner in the building; it was taken by someone when I went to the restroom and I could not leave the building to deliver mail until I received another scanner.[65]

10. I was terminated because of my age during my first employment period; this was proven. It happened again during my second employment period. Porche's age-related bias was evident and ongoing throughout my reinstatement and second probationary period. When I was reinstated on November 20, 2018, I asked Porche to not put me on another probationary period. Porche replied that he does not like to hire older workers because they tend to get hurt and go on restriction until they retire. He said he did not need another carrier with restrictions on his clock. He said this in my shop steward's presence. Furthermore, whenever he would give me instructions, he would always end the conversation by stating "this is not a set up" with a smirk on his face.[66]

Allen has testified generally to her second probationary period, which she has alleged was provided to her for pretextual reasons so that the USPS could "correct" the mistakes it made in her first termination. She has testified in her affidavit she had: "[n]o [t]raining;" "[n]o [t]ools;" "[n]o [c]ommunications;" "[n]o [c]onstructive [c]riticism, "[n]o [c]hance to [i]mprove." *Id.* at pp. 1-2, ¶¶ A.1-A.5, establishing that (1)none of [her] managers trained, re-trained, coached or counseled [her] regarding any aspect of [her] job; (2) none of [her] managers provided [her] with the proper tools to enable [her] to do [her] job effectively (3) her managers did not communicate with her "clearly, fairly or constructively, but resorted to verbal attacks of a personal and harassing nature because of [her] age and in retaliation for [her] prior EEO activity;" (4) her managers "did not identify [her] alleged deficiencies with any specificity but presented them in vague and generalized terms;" (5) nor did they provide constructive criticism; and "[b]ecause of these failures, my managers made it unreasonably difficult for me to perform my duties effectively and meet the requirements of my job."[67] Moreover, Plaintiff offers the Declaration of Glenn E. Webster, which

---

[65] Exhibit 1, p. 3, ¶ B.8.
[66] *Id.* at pp. 3-4, ¶ B.10.
[67] *Id.* at pp. 1-2, ¶¶ A.1-A.5. These allegations are supported by the Declaration of Glenn Webster and the paucity of information in USPS's own evaluations of Allen.

details the problems with the USPS's non-discriminatory reasons for terminating Plaintiff.[68]

Considering Plaintiff's detailed assertions, minus the conclusory, unsupported, non-specific, and

procedurally deficient reasons for termination, a reasonable jury could conclude that Plaintiff has

met the evidentiary burden to show a prima facie case.

### 2. Defendant's Nondiscriminatory Reasons are Pretextual; This Proves Both Discrimination and Retaliation.

The district court case of *Eugene v. Rumsfeld*, 168 F.Supp.2d 655, 665 (S.D.Tex.2001) is

quite instructive in its discussion of the interplay between the burden of persuasion and burden of

proof, and the burden shifting that occurs in summary judgment: "[i]f the employer meets its

burden, 'the McDonnell Douglas framework—with its presumptions and burdens'—disappear[s],

... and the sole remaining issue [is] 'discrimination vel non **[…] [I]t is permissible for the trier

of fact to infer the ultimate fact of discrimination from the falsity of the employer's

explanation. […] [M]ore likely than not, a showing of pretext will lead to an inference of

discrimination." [Citations omitted, emphasis supplied].**[69] The *Eugene* court goes on to cite a

relevant portion of *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000): "[t]he

factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is

accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case,

suffice to show intentional discrimination [;] [h]ence, a plaintiff need not, as a matter of course,

introduce additional, independent evidence of discrimination to avoid summary judgment." *See

Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *Blow*, 236 F.3d at 298; *Russell,* 235 F.3d at 223.

This analysis of the burden shifting arguments accords perfectly with the facts before the

Court, as the entire re-hire/refusal to hire Plaintiff was done under a pretextual motive to "fix"

---

[68] *See* Exhibit 2.
[69] The passage relies heavily on *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000) and *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), *inter alia*.

deficiencies in the first termination, going so far as to reference the settled first termination as grounds to not hire her for the Metairie post. Therefore, the nondiscriminatory reasons, viewed in the light most favorable to Plaintiff as circumstantial evidence, show pretext and design, 1) because they lack factual support, but also 2) because they blatantly violate the terms of the settlement and refer to Plaintiff's earlier EEO complaint. Thus, the whole summary judgment turns on the evidence presented by the Defendant as specifically traversed below, that Defendant's employees back dated Plaintiff's evaluations, provided vague, unsubstantiated, and non-constructive criticism of her job performance without sufficient time to assimilate said criticism.[70]

Defendant's specific allegations have been addressed per declarant, below, but Plaintiff's witness, Glenn Webster, established glaring deficiencies with Plaintiff's termination:

12.     I personally reviewed Allen's EEO complaint file (EEO Case No. 4G-700-0049-19) and saw that it did not contain the following documentation necessary to substantiate the termination of her employment during her secondary probationary period for failure to perform work which meets the expectations of the position, failure to accomplish tasks in an efficient and timely manner, and failure to work at a sufficient speed to keep up with the amount of work required by the position:

a.     No PS Form(s) 4588 Observation of Work Practices on file;

b.     No PS Form(s) 4584 Observation of Driving Practice on file;

c.     No Training Manual shown or presented as evidence by a Certified Carrier Instructor that Allen's training had been completed;

d.     No PS Form 1813 Late Leaving Report on file showing Allen was using excessive time to deliver the mail;

e.     No PS Form 1017 – A Time Disallowance Record on file on file showing Allen was extending her time on her mail delivery routes; and

f.     No PS Form 1017 – B Unauthorized Overtime Record on file showing Allen was utilizing unauthorized overtime to complete her mail delivery route(s).

13.     I personally reviewed Allen's EEO complaint file (EEO Case No. 4G-700-0049-19) and saw that it contained the following documentation that did not support the termination of her employment during her secondary probationary period on account of her job performance:

a.     PS Form 3996 Carriers Auxiliary Control, which is crucial to a letter carrier's daily operation, was not completed by management personnel daily or no PS Form 3996 was given by management to Allen;

b.     Allen's Employees Everything Report shows "Clock rings / operations"

---

[70] *See generally,* Exhibit 1, Affidavit of Anastasia Allen, and Exhibit 2, Declaration of Glenn E. Webster, covered in detail below.

being changed by management personnel daily;

        c.      There was no OJT training manual presented by management to validate that Allen was trained properly on "the use of clock operations";

        d.      Likewise, Allen's training booklet that should have been completed by OJI Darlene Fulton and would have shown Fulton completed Allen's training, was not in Allen's file as required by USPS policies and procedures.

        e.      Dates on the PS Form 1750 Evaluation / Probation Report were conflicting with actual evaluation dates;

        f.      Allen's supervisors did not have her fill out a PS Form 1260 Time Sheet which is required to correct supposedly excessive time use; and

        g.      Allen never received discipline from any "Investigative Interview" conducted by her supervisors.[71]

Therefore, as Webster notes, there was no actual evidence of these non-pretextual reasons in Allen's file prior to the EEO proceeding. She had never been disciplined and, to compound matters, there was no proof that she was properly trained during either of her probationary periods. The lack of evidence contradicts the bald assertions of the declarants that they trained Plaintiff. This is corroborated by the testimony of Plaintiff who stated that Porche and Lagrue set her up to fail by altering her clock ring times and beginning her delivery time as soon as she reported to the station.[72]

    Other allegations can be addressed per the Declarant as follows:

For the allegations by McFall that Plaintiff lied during her interview process, Plaintiff has testified:

> 3.When I interviewed for the first Metairie job opening (No. 10242872), I informed Manager Taylor that I had filed an EEO complaint and that I had been terminated from the USPS during my first 90-day probationary period in July 2018. In the interview, Taylor asked why I wanted to work at the Metairie Station. I explained that I was being discriminated against, had filed an EEO, and wanted to work in an environment that was free of discriminatory actions toward employees. Taylor responded by saying that I was doing the right thing and said not to give up my EEO. It is my understanding of USPS hiring procedures, that Taylor as the designee for interviews would have given my interview notes to McFall.

> 4. In February 2019 when I applied for a second job opening at the Metairie Post Office (No. 10292967). I was interviewed for this second position and was given a job offer via email which I accepted. Postmaster McFall never interviewed me or ever asked me about

[71] Exhibit 2, pp. 3-4, ¶ B.12.
[72] Exhibit 1, p. 3, ¶ B.8.

my USPS employment. Manager Taylor never asked about my USPS employment either. However, I did voluntarily give my employment status to Taylor on a phone a call to him shortly after I was separated, and I also put information about my employment status on my USPS application. I never had an interview with McFall nor did I speak with him during the interview process. Therefore, I never told him that I was working for the USPS in New Orleans.

5. I did meet all requirements for the position because I did not lie during my interview or on my application. I accurately disclosed my employment status with the USPS on my application and during my interview with Manager Taylor.[73]

McFall concludes that Plaintiff lied but, as the facts show, this is an oversimplification of the record. The fact is both Plaintiff and Defendant were bound by the settlement agreement to not mention the settlement of Plaintiff's first EEO, yet McFall states in his affidavit that Plaintiff was not hired and not honest because she did not reveal her prior "terminations."[74] This is an improper reference to the settlement itself.

Regarding the failure to hire by Postmaster Leonard, Plaintiff's testimony establishes the likelihood of pretext as a genuine issue of material fact:

1. […] In her declaration, Leonard states she was not aware of my EEO activity (R. Doc. 59-10, p. 1, ¶ 4), but then states that Muhammad[75] did not have a prior EEO (R. Doc. 59-10, p. 1, ¶ 7).

2. Manager Porche and Supervisor Lagrue gave false and misleading statements about my work history, performance, work ethics and character which resulted in my not being considered for a position at the Marrero Post Office. Whenever I was given instructions by supervisors, I did what I was told. If they instructed me to do something that was contrary to my training or understanding of USPS policies and procedures, I would ask my shop steward if the instructions given were correct and did not violate postal policy. In each case where I sought guidance from my shop steward, the instructions I had received were a present violation of postal policy or procedure. Finally, I was not required to sign my performance evaluations.

3. Postmaster Leonard's decision not to hire me was based on false and misleading information concerning my job performance, alleged deficiencies, personal conduct, and my qualifications and fitness as a CCA which was given to her by my former

[73] *Id.* at pp. 4-5, ¶¶ C.3-C.5.
[74] R. Doc. 59-8. ¶¶ 9-10.
[75] The similarly situated employee, see Exhibit 1, p. 5, ¶¶ D.1-D.5.

manager Joe Porche and supervisor Charlotte Lagrue. They did this in retaliation for my filing an EEO complaint (USPS EEO No. 4G-700-0049-19) against them.[76]

Not only did Leonard, McFall, and Segura fail to hire Plaintiff based on the same pretextual reasons, they each testified to using the prior settled EEO termination or non-disclosure of the termination as a reason not to hire Plaintiff, which amounts to discriminatory pretext.

Finally, as stated above in Plaintiff's affidavit, these reasons were pretextual because Porche expressed he disliked older employees because they would be out on leave more, causing hardship for himself. Looking closely at the pretextual reasons, they were motivated by the intent to discriminate, and they show a pattern of discriminatory actions taken to set Plaintiff up as bad employee, but they fail to memorialize this accusation through official post office documents, reports, and forms, adding to the reasonable assumption that, since the supervisor's specific complaints were never specifically addressed in the official work record, the USPS's actions were pretextual and retaliatory.

### 1.  The Same Actor Inference Should Not Apply

Evidence that an employer has given a false reason for terminating employment may contribute to a determination that the reason was pretext for discrimination. *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir.1996).  On the other hand, Defendant has availed itself of the so-called "same actor inference," which allegedly, "creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–422 (5th Cir. 2009) citing *Haun, supra*.  In *Spears*, the Fifth Circuit cautioned that "the presumption created by the same actor inference is not irrebuttable." *Id*. (*citing Haun v. Ideal Industries, Inc.*, 81 F.3d 541, 546 (5th Cir. 1996)) *Spears* and subsequent courts have adopted the line of reasoning because "a

---

[76] Exhibit 1, p. 5, ¶¶ D.1-D.3.

discriminatory animus that exists in termination but not in hiring seems irrational." *Jones v. R.G. Barry Corp.*, No. 16-cv-154, 2017 WL 1049566, at *9 (W.D. Tex. Mar. 17, 2017) (*citing Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). Plaintiff would offer that the contemporaneous discriminatory statements of Joseph Porche, and his meddling in her rehiring, along with Plaintiff's allegations that the re-hiring was pretextual, making this inference inapplicable. Plaintiff would also object to application of the inference as it is not contained in the text of the act and is a rule created by improper expansion of dicta and by *stare decisis*.

### 2. More Time for Discovery

Alternatively, if the Court would not deny the motion for summary judgment outright, then Plaintiff respectfully requests additional time to depose the Defendant's employee-witnesses who have provided statements concerning reasons for termination. Most importantly, Plaintiff wants to take the deposition of Charles Jackson who Plaintiff has testified overheard the remarks Porche made about hiring older workers. A deposition request has been submitted to the Defendant for this witness. Motions under Rule 56(d) are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[77] The nonmovant, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980). Therefore, any request to delay the Rule 56 motion must, according to Rule 56(d): "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."

---

[77] *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).

*Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).[78]

As stated above, the declarations upon which the USPS relies are vague, conclusory, and are not based on personal knowledge. Continuing the summary judgment motion to permit the taking of depositions of employee-witnesses who have testified by declaration will test the adequacy of such vague and conclusory evidence. Also, Plaintiff will seek to depose the USPS employee-shop steward, Charles Jackson, who overheard Porche's discriminatory comment, which testimony is needed to corroborate statements of age discrimination. Plaintiff requests a continuance to accomplish this as the discovery deadline is still about two months away.

## III.    CONCLUSION

For all the foregoing reasons, plaintiff Anastasia Nedd Allen requests this Honorable Court deny Defendant's summary judgment motion.

Respectfully submitted,

/s/  Bruce C. Betzer
Bruce C. Betzer (La. #26800)
Jennifer S. Avalone (La. 35613)
The Law Office of Bruce Betzer
A Professional Limited Liability Company
3129 Bore Street
Metairie, Louisiana 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
E-mail: bruce@brucebetzer.com

/s/ Leonor E. Prieto
Leonor E. Prieto (La. #31530)
Prieto Law Firm, LLC
110 Veterans Memorial Blvd., Ste. 200A-2
Metairie, Louisiana 70005
Telephone: (504) 408-1309
Facsimile: (877) 935-4842
E-mail: lee@prietolawfirmllc.com

***Attorneys for plaintiff Anastasia Nedd Allen***

---

[78] *Cited in Dominick v. Wolf*, 2021 WL 5083715, pg. 4 and *citing C.B. Trucking, Inc. v. Waste Management Inc*., 137 F.3d 41, 44 (1st Cir. 1998).