# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANASTASIA NEDD ALLEN | * | CASE NUMBER: 20-CV-304 |
| VERSUS | * | JUDGE: ASHE |
| LOUIS DEJOY, UNITED STATES POSTMASTER GENERAL | * | MAGISTRATE: NORTH |

***********************************************************************

## DECLARATION

NOW INTO COURT comes **GLENN E. WEBSTER**, who makes the following declaration pursuant to 28 U.S.C. § 1746:

1. I retired from the United States Air Force with an Honorable Discharge in 1993 and then began working for the United States Postal Service (USPS) in 1985 until my retirement in April 2018.

2. I was an employee of the USPS for over 32 years and sometimes worked at the New Orleans Central Station during the relevant time periods in 2018 and 2019, assigned as the Route Inspector Designee for National Association of Letter Carriers (NALC), Branch 124.

3. I have also served as Shop Steward for the NALC, City Carrier's craft for 17 years in North Carolina, Baton Rouge and New Orleans, Louisiana.

4. I am currently employed with the NALC as a Route Inspection Designee with the NALC Branch 124 merge.

5. Because of my former employment with the USPS and NALC (to included present status as a Route Inspection Designee with NALC Branch #124), I am familiar with the job requirements of a City Carrier Assistant (CCA) position and the responsibilities of the CCA position. I am also familiar with the hiring process for temporary and permanent employee

status, the training which "new CCAs" undergo, the standards by which a CCA is evaluated during their 90-day probationary period, and the methods and equipment a CCA uses to deliver mail on an assigned route.

6. As an appointed Union Representative in good standings and assigned to facilitate City Carrier's Route Inspections which may involve Regular City Carriers, City Carrier Technicians (T-6) and City Carrier Assistants (CCAs), I am required and authorized to address the necessary duties and/or components as applicable to my position as a Route Inspector Designee for NALC Branch #124.

7. However, I have been called by individuals in the Carrier Craft (Regulars, T-6 and CCAs) to assist and/or represent them in EEO cases both present and past.

8. Representing a Carrier during an EEO case is legally permitted and without prejudice based on my status as a Shop Steward, retired USPS employee or NALC Union member. Representation is solely based EEO regulations and guidelines, not a union member's status.

9. When I represent a CCA or letter carrier-complainant during the EEO complaint process, I do the following:

   a. Review the EEO complaint file and all exhibits;

   b. Assist the complainant with gathering and submitting information in support of their EEO claim;

   c. Represent the complainant during investigation phase;

   d. Attended meetings between the complainant, EEO Agency Dispute Resolution Specialist, USPS officials and EEOC investigators;

   e. Represent the complainant at informal settlement discussions with the

complainant's supervisor/USPS official; and

 f. Represent the complainant during formal EEOC proceedings.

10. Around January 6, 2019, before her second job termination, Ms. Allen asked me to represent her in connection with her second EEO complaint (USPS EEO Case No. 4G-700-0049-19) regarding an adverse workplace investigation conducted against her at Central Station, specifically that the investigation was motivated by Ms. Allen's age and in retaliation against her for her previous EEO claim.

11. As her representative for the EEO complaint process, I did the following:

 a. I personally reviewed all the documents contained in Allen's EEO complaint file (USPS EEO Case No. 4G-700-0049-19) including the complaint forms, affidavits, and exhibits;

 b. Attended meetings between the EEO Agency Dispute Resolution Specialist, EEO investigators and Allen; and

 c. Assisted Allen with gathering and submitting information in support of her EEO claims of discrimination based on age and retaliation for prior EEO Activity.

12. I personally reviewed Allen's EEO complaint file (USPS EEO Case No. 4G-700-0049-19) and saw that it did not contain the following documentation necessary to substantiate the termination of her employment during her secondary probationary period for failure to perform work which meets the expectations of the position, failure to accomplish tasks in an efficient and timely manner, and failure to work at a sufficient speed to keep up with the amount of work required by the position:

 a. No PS Form(s) 4588 Observation of Work Practices was on file as evidence that Allen's work practices had been observed by her supervisors and found to be

3

deficient;

b. No PS Form(s) 4584 Observation of Driving Practice was on file as evidence that Allen's driving practices had been observed by her supervisors and found to be deficient;

c. No Training Manuel was shown or presented as evidence by a Certified Carrier Instructor that Allen's training had been completed;

d. No PS Form 1813 Late Leaving Report on file as evidence showing Allen was using excessive time to deliver the mail;

e. No PS Form 1017-A Time Disallowance Record was on file as evidence showing Allen was extending her time on her mail delivery routes; and

f. No PS Form 1017-B Unauthorized Overtime Record was on file as evidence showing Allen was utilizing unauthorized overtime to complete her mail delivery routes.

13. I personally reviewed Allen's EEO complaint file (USPS EEO Case No. 4G-700-0049-19) and saw that it contained the following documentation that did not support the termination of her employment during her secondary probationary period on account of her job performance:

   a. PS Form 3996 Carriers Auxiliary Control, which is crucial to a letter carrier's daily operation, was not completed by management personnel daily, or no PS Form 3996 was given by management to Allen;

   b. Allen's Employees Everything Report shows "Clock Rings/Operations" being changed by management personnel daily;

   c. There was no OJT training manual presented by management to validate that Allen

4

was trained properly on "the use of clock operations";

d. Likewise, Allen's training booklet was not in her file as required by USPS policies and procedures; it should have been completed by OJI Darlene Fulton and would have shown that Fulton completed Allen's training;

e. Dates on the PS Form 1750 Evaluation/Probation Report were conflicting with actual evaluation dates;

f. Allen's supervisors did not have her complete a PS Form 1260 Time Sheet which is required to correct supposedly excessive time use; and

g. Allen never received discipline from any "Investigative Interview" conducted by her supervisors.

14. There was no indication on Ms. Allen's PS Form 1750 Employee Evaluation and/or Probation Report that retention or rehire was denied, nor were there any comments indicated by Supervisor Charlotte Lagrue concerning noncompliance.

15. Allen's Termination Notices did not address any discrepancies concerning Allen's attitude as a reason for her termination.

16. Station Manager Porche indicated Charlotte Lagrue was the management official who was responsible for terminating Allen's employment; however only Porche had authority to terminate employment pursuant to the Section ELM 365.324 of the Employee Labor Relation Manuel, that states which postal officials have the authority and should initiate the process of terminating a USPS employee.

17. Supervisor Lagrue could only recommend such an action based on the appropriate policies, procedures and evidence.

18. While Station Manager Porche has stated CCA Anastasia Allen's performance was

unacceptable and this was the reason she was "terminated" during her second probationary period, I personally have reviewed and inspected the USPS documents submitted in her EEO complaint (USPS EEO Case no. 4-G-700-0049-19) during the time I was her EEO representative which included personal employment information submitted by the USPS and Mrs. Allen (EEO Complainant). I found "no documentation" that would validate discipline or violations for which Mrs. Allen's assigned supervisors or mangers have stated. Based on "reasons for terminating" Mrs. Allen, the merits which the USPS has characterized in this case lack evidence based on USPS, NALC and Joint Contract policies/procedures.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _Feb 1ST_, 2022.

_[signature]_
GLENN E. WEBSTER