UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANASTASIA NEDD ALLEN                              CIVIL ACTION

VERSUS                                           NO. 20-304

UNITED STATES POSTAL SERVICE                     SECTION M (5)

## ORDER & REASONS

Before the Court is a motion for summary judgment by defendant the United States Postal

Service ("USPS").[1]  Plaintiff Anastasia Nedd Allen ("Allen") responds in opposition,[2] and USPS

replies in further support of its motion.[3]  Having considered the parties' memoranda, the record,

and the applicable law, the Court issues this Order & Reasons granting USPS's motion for

summary judgment.

## I.    BACKGROUND

Allen filed this action against USPS alleging employment discrimination and retaliation

claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.[4]  On

April 30, 2018, Allen was hired as a city carrier assistant ("CCA") at the USPS post office station

located at 1300 Florida Boulevard, New Orleans, Louisiana.[5]  She began working subject to a 90-

---

[1] R. Doc. 59.  This Order refers to the defendant as USPS, not the current Postmaster General Louis DeJoy. In its motion for summary judgment, USPS urges dismissal of plaintiff's claims based on her purported failure to name the proper party defendant – the head of the department, agency, or unit, *see* 42 U.S.C. § 2000e-16(c) – presumably due to plaintiff's reference to USPS as the defendant in prior filings.  The argument is misplaced, however, because plaintiff did, in fact, specifically name the prior Postmaster General Megan Brennan, the then-head of the USPS, as the defendant in the original complaint.  *See* R. Doc. 1.  Under Rule 25(d) of the Federal Rules of Civil Procedure, a public "officer's successor is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded."  For purposes of convenience, the clerk of court has chosen to use the agency's name, rather than that of the defendant public officer, in the caption of the case.  And, as the parties in their briefing have used the acronym USPS to refer to the defendant, the Court will follow suit.
[2] R. Doc. 68.
[3] R. Doc. 75.
[4] R. Doc. 1.
[5] R. Docs. 1 at 2; 59-2 at 1.

day probationary period.[6]   Allen was terminated on July 18, 2018.[7]   She initiated Equal Employment Opportunity ("EEO") contact regarding her termination on August 22, 2018.[8]   Allen settled the complaint on November 20, 2018, and Joseph Porche, the USPS station manager, reinstated her as a CCA on December 8, 2018, subject to a renewed 90-day probationary period.[9]

On January 7, 2019, Charlotte Lagrue, Allen's immediate supervisor, completed Allen's first 30-day employee evaluation and probationary report for her second USPS stint.[10]   The report states that Allen's performance was "unacceptable" as to "work quantity," "work quality," and "dependability," and "satisfactory" as to "work relations," "work methods," and "personal conduct" – the six factors delineated for evaluation.[11]   That same day, Allen initiated a second informal EEO contact.[12]   On February 6, 2019, Lagrue completed Allen's 60-day evaluation, this time noting that Allen's performance was "unacceptable" as to all six factors.[13]   Porche terminated Allen for a second time on February 26, 2019.[14]   The letter of separation, signed by Porche, was delivered to Allen identifying the reasons for separation as: "Failure to perform work which meets the expectations of the position"; "Fail[ure] to accomplish tasks in an efficient and timely manner"; and "Fail[ure] to work at a sufficient speed to keep up with the amount of work required by the

---

[6] R. Docs. 1 at 6; 59-2 at 1.
[7] R. Docs. 1 at 2; 59-2 at 1.
[8] R. Docs. 1 at 2; 59-2 at 1.
[9] R. Docs. 1 at 3, 7; 59-2 at 1-2.
[10] R. Docs. 59-2 at 2; 59-6.  Allen charges, without reference to any evidence, that USPS backdated her evaluations.  R. Doc. 68 at 20.
[11] R. Doc. 59-6.
[12] R. Docs. 1 at 8; 59-2 at 2.
[13] R. Doc. 59-6.
[14] R. Docs. 1 at 9; 59-2 at 2.

position."[15]  Allen filed a complaint of discrimination with USPS on March 19, 2019, alleging that she was terminated based on her age and in retaliation for her earlier EEO activity.[16]

While still employed at the New Orleans USPS station, Allen applied for a mail carrier position at a Metairie USPS station.[17]  She was not hired.[18]  Following her second termination from the New Orleans USPS station, she applied for a position at a Marrero USPS station and yet another position at the Metairie USPS station.[19]  Again, Allen was not hired at either station.[20] Thereafter, she amended her EEO complaint to assert that she was not selected for hire at the Metairie and Marrero USPS stations because of her age and in retaliation for her prior EEO activity.[21]  The Metairie USPS station's postmaster, Matthew McFall, declares that he did not select Allen for hire the first time because, while processing her application, personnel learned that she had been terminated from the USPS.[22]  McFall states that he chose not to hire Allen the second time because "she was not honest in the interview process."[23]  Specifically, he says that Allen stated in the interview process that she was working at the New Orleans USPS station when in fact she had been terminated from USPS twice.[24]  According to McFall, honesty, trustworthiness, and reliability are requirements for the job, and she therefore did not meet the job qualifications.[25] Similarly, Alisa Leonard, postmaster at the Marrero USPS station, declares that she did not hire

---

[15] R. Doc. 59-7.  USPS lists in its motion other reasons for her termination, including that Allen "resisted constructive criticism from her supervisor, failed to follow instructions, expanded the street time of her assignments, left mail in the building and had to return for the mail, and left the scanner in the building and had to return from the route for the scanner." R. Doc. 59-1 at 5.  Additionally, USPS states that Allen's "inefficiencies resulted in expanded street time and delayed mail, which cost the USPS money," and that Allen was "advised of her deficiencies during her probationary evaluations and her work did not improve." *Id.* at 16.

[16] R. Docs. 1 at 3.

[17] R. Docs. 1 at 10; 59-2 at 4.

[18] R. Docs. 1 at 10; 59-2 at 4-5.

[19] R. Docs. 1 at 11-12; 59-2 at 5-6.

[20] R. Docs. 1 at 11-12; 59-2 at 5-6.

[21] R. Doc. 1 at 4.

[22] R. Doc. 59-8 at 1.

[23] *Id.* at 2.

[24] *Id.*

[25] *Id.*

Allen for the position there because she did not meet the requirements or qualifications of the position based on her previous evaluations and separations for unsatisfactory performance.[26] According to Leonard, Allen's age and prior EEO activity were not factors in her decision not to hire Allen.[27]

Following an investigation, on October 30, 2019, USPS rendered its thorough, 40-page final agency decision on Allen's second EEO complaint, concluding that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged."[28]  The decision informed Allen of her right to bring a civil action, which she timely filed on January 28, 2020.[29]

## II.  PENDING MOTION

In support of its motion, USPS argues that any claims pertaining to Allen's termination from her first job with USPS, at the New Orleans station from April 30, 2018 to July 18, 2019, are time-barred under 29 C.F.R. § 1614.105(a) because that termination occurred more than 45 days before she made her second EEO contact on January 6, 2019.[30]  Alternatively, USPS argues that even if claims related to Allen's first termination are not time barred, they are moot because Allen settled that case with USPS and her employment was reinstated.[31]

As to Allen's claims concerning her termination from her second stint with USPS at the New Orleans station, USPS argues that Allen cannot establish a prima facie case of age discrimination.[32]  Specifically, USPS argues that under the *McDonnell Douglas* burden-shifting

---

[26] R. Doc. 59-10 at 1.

[27] *Id.* at 2.

[28] R. Doc. 59-15 at 39.

[29] *Id.* at 40.

[30] R. Doc. 59-1 at 11-12.

[31] *Id.*  USPS also argues that Allen is not entitled to a trial by jury.  *Id.* at 11.  Because this Court grants USPS's motion for summary judgment, it need not address the issue.  Nevertheless, it should be noted that the Supreme Court held in *Lehman v. Nakshian* that "Congress did not intend to confer a right to trial by jury on ADEA plaintiffs proceeding against the Federal Government."  453 U.S. 156, 165 (1981).

[32] R. Doc. 59-1 at 14

framework, Allen was not qualified for the position, she cannot establish that she was replaced by someone outside of her protected class or that she otherwise was discharged because of her age, and she fails to show that a similarly situated individual outside of her protected class was treated more favorably.[33]  USPS then contends that even if Allen could establish a prima facie case of age discrimination, she cannot overcome USPS's legitimate, non-discriminatory reasons for terminating her, namely, that she resisted constructive criticism, expanded street time, left mail and her scanner in the building, was combative during her probationary period, and did not improve despite being informed of her deficiencies.[34]  Further, USPS argues that the same-actor inference applies.[35]

Next, USPS argues that Allen cannot establish that retaliation was a motivating factor in terminating her, as it had legitimate, non-discriminatory reasons for doing so.[36]  USPS also argues that Allen cannot establish that the Metairie and Marrero USPS stations did not hire her because of her age or in retaliation for her prior EEO activity.[37]  As for Allen's hostile work environment claim and her marital status and disability discrimination claims, USPS argues that Allen did not include them in her second EEO complaint and thus did not exhaust all administrative remedies before bringing those claims here.[38]

In opposition, Allen argues that her claims appropriately allude to her first termination because many of USPS's witnesses (Porche, McFall, and Lagrue) refer to her first termination and settlement in their declarations, thereby violating the settlement agreement and erasing the

---

[33] *Id.* at 13-15.

[34] *Id.* at 16-18.

[35] *Id.* at 18-19 (quoting *Spears v. Patterson UTI Drillling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009) (observing that the same-actor inference is "a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue")).

[36] *Id.* at 19-20.

[37] *Id.* at 20-21.

[38] *Id.* at 21-22.

distinction between acts occurring before and after the settlement.[39]   Concerning her second

termination, Allen argues that she has alleged a prima facie case of age discrimination and

retaliation and that USPS's non-discriminatory reasons are pretextual.[40]   Specifically, she argues

that USPS "set her up to fail" by, for example, not training her, not providing her with proper tools,

and not giving her constructive criticism.[41]   Lastly, Allen argues that the same-actor inference does

not apply because Porche only rehired Allen as pretext to terminate her again.[42]

In reply, USPS argues that the four-month gap between Allen's protected activity in

November 2018 and the adverse employment action in February 2019 is too attenuated to satisfy

the causation element of a prima facie case of retaliation.[43]   Next, USPS argues that Allen's

---

[39] R. Doc. 68 at 8-9.  Allen also argues that the declarations of Porche, Lagrue, Leonard, and Bianca Martin should be stricken or, in the alternative, that the case should be continued so that she can depose "the most important declarants," but Allen has not filed separate motions on either of these issues.  *Id.* at 11-12.  In her opposition to USPS's motion for summary judgment, Allen also requests additional time to depose Charles Jackson, an employee of USPS who Allen maintains overheard certain discriminatory statements.  *Id.* at 24-25.  Again, Allen has not filed a separate motion on this issue.  USPS opposes Allen's argument that the case should be continued, arguing that Allen has been given ample time to take depositions and that Rule 56(d) of the Federal Rules of Civil Procedure does not require "*any* discovery" to take place before granting summary judgment.  R. Doc. 75 at 6-7 (emphasis in original).
  Rule 56(d) requires a non-movant to show through affidavit or declaration that, "for specified reasons," she cannot present essential facts to justify her opposition.  Therefore, "[t]o succeed on a Rule 56(d) motion … the party requesting discovery must provide an affidavit or declaration in support of the request that 'states with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials to assist him in opposing summary judgment.'"  *Whitener v. PLIVA, Inc.*, 606 F. App'x 762, 765 n.1 (5th Cir. 2015) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir.1993)) (alterations in original omitted); *see also Reese v. Anderson*, 926 F.2d 494, 499 n.5 (5th Cir. 1991) ("In the context of a summary judgment motion, vague assertions of the need for additional discovery are as unavailing as vague responses on the merits.").  Here, Allen fails to meet the requirements of 56(d) because she has not submitted an affidavit or declaration in support of her request for depositions, nor has she specified what she expects to discover from these depositions.  *See, e.g.*, *Krim*, 989 F.2d at 1443 (affirming the district court's refusal to permit further discovery because the plaintiff did not state "exactly how he expected those materials would assist him in opposing summary judgment").  Instead, Allen generally states that she wants to depose "the most important declarants to test the specificity of [their] assertions" and to "test the adequacy of such vague and conclusory evidence."  R. Doc. 68 at 12, 25.  She does state that Jackson's deposition is needed to corroborate the statement made by Porche to Allen.  *Id.* at 25.  However, for summary judgment purposes, Allen's own testimony about this point does not need to be corroborated because the Court does not weigh the evidence or make credibility determinations at this stage.
  [40] *Id.* at 16-19.
  [41] *Id.* at 21-23.
  [42] *Id.* at 23-24
  [43] R. Doc. 75 at 1-3.  USPS also argues that, because Allen fails to specify in her opposition which of USPS's uncontested material facts she disputes, all of the facts should be deemed admitted.  *Id.*  However, Allen did include her own separate statement of contested material facts, which "in part" meets the requirements of Local Rule 56.2.  *Olmeda v. Cameron Int'l Corp.*, 139 F. Supp. 3d 816, 827 (E.D. La. 2015).  Reading USPS's statement of uncontested

evidence of age animus – that Porche stated he did not like to hire older workers because they tend to get hurt and go on restriction until they retire – should be ignored because Allen failed to mention the statement at the EEO level and in response to written discovery in this lawsuit.[44] USPS argues that the statement should also be ignored because Allen failed to identify when the statement was made, to whom it was made, and who it purports to reference.[45]  USPS then states that the only other evidence produced by Allen are Glenn Webster's declaration, which it argues should be stricken because he is not qualified to offer expert testimony, and Allen's own affidavit, which USPS argues consists only of self-serving and conclusory statements.[46]

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323.  If the moving party meets

---

facts together with Allen's statement of contested facts shows that Allen has sufficiently disputed the relevant facts. *Compare* R. Doc. 59-2, *with* R. Doc. 68-1.

[44] *Id.* at 3-4.

[45] *Id.* at 4.

[46] *Id.* at 4-6 (citing R. Docs. 68-2; 68-3).

that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such

facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Analysis

#### 1. Procedurally barred claims

Allen made two separate EEO complaints, one in August 2018, and the other in January 2019. She initiated the August 2018 EEO complaint after her first termination from the USPS New Orleans station. The settlement of Allen's first EEO complaint resulted in her reinstatement. In January 2019, Allen initiated her second EEO complaint, which was eventually denied and resulted in the present lawsuit. "Generally, discrimination claims alleging conduct that occurred more than 45 days before the initiation of administrative action (contacting an EEO counselor) are time barred in a subsequent action in federal court." *Pacheco v. Mineta*, 448 F.3d 783, 791 n.11 (5th Cir. 2006) (citing 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105). Accordingly, to the extent Allen's claims are directed to any conduct occurring 45 days before her EEO contact on January 7, 2019, which included her first termination and first EEO contact, they are time-barred. Allen is also procedurally barred from alleging discrimination regarding her first termination because Allen settled that EEO claim and was reinstated by USPS.[47] *Duplantier v. Potter*, 2010 WL 5247444, at *7-8 (E.D. Tex. Nov. 16, 2010) (holding that the plaintiff could not pursue a discrimination claim

---

[47] R. Doc. 59-5.

against the USPS that he had already voluntarily settled in connection with a prior EEO complaint), *adopted*, 2010 WL 5247435 (E.D. Tex. Dec. 15, 2010).

Moreover, "[t]he Fifth Circuit has consistently held that Title VII and ADEA claims that have not been exhausted through the administrative process cannot be filed in federal court." *Barnes v. McHugh*, 2013 WL 3561679, at *8 (E.D. La. July 11, 2013) (citing *Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir.1997)).   A lawsuit is limited to the charges of discrimination "like or related to" the allegations in the EEO complaint.   *Phillips v. Starwood Hotels & Resorts Worldwide, Inc.*, 2013 WL 5570416, at *2 (E.D. La. Oct. 9, 2013) (quoting *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 118 (5th Cir. 2005)).   "The longstanding rule is that 'the scope of the judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"   *Id.* (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir.2008)).

For example, in *Harris v. State Farm Fire & Casualty Co.*, the district court held that several allegations of discrimination were not properly before the court because they were not included in the EEO charge.   178 F. Supp. 2d 680 (W.D. La. 2001).   In that case, the plaintiff's EEO charge referred to her employer's failure to promote her to two positions.   *Id.* at 690. Nevertheless, she alleged in the subsequent lawsuit that she was systematically denied promotions and opportunities by her employer, that she was treated in a racially discriminatory manner, and that her complaints of mistreatment were met with hostility and retaliation.   The court concluded that these additional allegations were not so similar or related to the EEO charge that they would have been subject to the EEOC investigation, and thus, they were dismissed.   *Id.*

In support of her present ADEA claim, Allen asserts factual allegations relating to her first termination and EEO complaint (the one that was settled).[48]   However, the relevant EEO investigation – the one growing out of her second termination and EEO charge – focused on only four claims:

> Claim 1: On February 26, 2019, Allen was separated from service.
>
> Claim 2: On February 26, 2019, Allen was not hired at the Metairie Station for job posting #10242872.
>
> Claim 3: On May 8, 2019, Allen was not hired at the Marrero Station for job posting #10292968.
>
> Claim 4: On May 21, 2019, Allen was not hired at the Metairie Station for job posting #10292967.[49]

In addition, the "acceptance for investigation" letter, together with the subsequent "acknowledgement of amendment to complaint" letter concerning Allen's second EEO complaint, explicitly state that the "scope of the investigation will include the following issue(s) only":

> Specific Issue(s): You allege discrimination based on Age (Unspecified), and Retaliation (Prior EEO Activity), when:
>
> 1. On or about February 26, 2019, you were terminated during your probationary period;
>
> 2. On an unspecified date, you were not hired for a position at the Metairie Station after your February 20, 2019, interview and were told that you did not get the position because Station Manager Joe Porche said negative things about you;
>
> 3. On an unspecified date, you were not hired for a position at the Marrero Station after your April 26, 2019, interview;
>
> 4. On May 21, 2019, you were told that you would not be hired for a position at the Metairie Station after you had already been offered and accepted the position on May 17, 2019.[50]

---

[48] R. Doc. 1 at 15-16.
[49] R. Doc. 59-15 at 8-10.
[50] R. Docs. 59-12 at 1; 59-13 at 1-2.

Therefore, Allen's first termination, occurring in July 2018, as well as Allen's first EEO complaint, which was made in August 2018 and settled in November 2018, were not addressed in Allen's second EEO complaint that gave rise to this case, and thus are not properly before the court.

Similarly, Allen did not administratively exhaust her claims for disability and marital status discrimination or related hostile work environment because she did not raise them in her second EEO complaint, as amended in May 2019. In *Eberle v. Gonzales*, the Fifth Circuit upheld the district court's determination that the plaintiff failed to exhaust his administrative remedies as to his race and disability discrimination claims because they had not been included in the relevant EEO complaint. 240 F. App'x 622, 627 (5th Cir. 2007). The plaintiff had filed a complaint with the EEOC alleging age discrimination for failure to promote. *Id.* at 624-25. Following the EEOC's investigation, the plaintiff sued his employer, alleging for the first time failure to promote based on his race and disability, as well as his age. *Id.* at 625. The Fifth Circuit stated that because the plaintiff could have raised his claims for race and disability discrimination in the EEO complaint, but neglected to do so, he failed to exhaust his administrative remedies as to those claims. *Id.* at 627.

Here, Allen's second EEO complaint did not allege claims for hostile work environment or discrimination based on disability and marital status. It alleged only claims for age discrimination and retaliation for her prior EEO activity, each arising out of her second termination.[51] Therefore, the allegations regarding Allen's first termination and her claims for hostile work environment and discrimination based on disability and marital status are dismissed for failure to exhaust administrative remedies. Remaining, at this juncture, are Allen's claims for: (1) age discrimination in relation to her February 2019 termination from the New Orleans USPS

---

[51] R. Doc. 59-13 at 1-2.

station; (2) age discrimination in relation to her not being hired at the Metairie and Marrero USPS

stations in 2019; (3) retaliation in relation to her February 2019 termination from the New Orleans

USPS station; and (4) retaliation in relation to her not being hired at the Metairie and Marrero

USPS stations in 2019.[52]

### 2.   Age discrimination claims

The ADEA prohibits discrimination based on an employee or applicant's age in both the

private and federal sectors.  29 U.S.C. §§ 623, 633a.  Section 633a applies to federal employees

working for certain federal agencies, including the United States Postal Service.  *Id.* § 633a(a).  It

states that "[a]ll personnel actions affecting employees or applicants for employment who are at

least 40 years of age … shall be made free from any discrimination based on age."  *Id.*  A plaintiff

can demonstrate age discrimination through direct evidence or by an indirect or circumstantial

method of proof.  *Ollie v. Plano Indep. Sch. Dist.*, 323 F. App'x 295, 299 (5th Cir. 2009) (citing

*Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).  When a plaintiff relies on

circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies to the ADEA

discrimination claim as follows:[53]

> "First, the plaintiff must prove a prima facie case of age discrimination.  In this
> circuit, a prima facie case consists of evidence that a plaintiff: (1) was discharged;
> (2) was qualified for the position; (3) was within the protected class at the time of
> discharge; (4) was replaced by someone outside the protected class, or ... by
> someone younger, or ... show otherwise that his discharge was because of age.  If
> the plaintiff succeeds, the burden of production shifts to the defendant to rebut the
> presumption of discrimination created by the prima facie case by articulating a
> legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff.
> Finally, the plaintiff must prove that the defendant's reasons are pretexts for
> unlawful discrimination either by showing that a discriminatory reason more likely
> motivated the defendant or by showing the defendant's reason is unworthy of

---

[52] R. Doc. 1 at 3-4.

[53] *Rachid*, 376 F.3d at 309; *Ollie*, 323 F. App'x at 299.  "While the Supreme Court 'has not definitively resolved' whether the *McDonnell Douglas* framework applies to ADEA claims, 'we are bound by our circuit precedent' to apply it."  *Wright v. United Parcel Serv., Inc. (Ohio)*, 842 F. App'x 869, 872 n.3 (5th Cir. 2021) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

credence.   The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision."

*Pacovsky v. City of Booneville*, 347 F. App'x 42, 44 (5th Cir. 2009) (quoting *Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1504-05 (5th Cir. 1988)).   Federal employees alleging discrimination under the ADEA do not have to prove that age was a but-for cause of the employment decision in order to show a violation of the ADEA.  *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020).   Still, but-for causation is important in determining the appropriate remedy.   *Id.*   Thus, for federal employees to obtain all forms of relief available under § 633a(a), including hiring, reinstatement, backpay, and compensatory damages, they must show that age discrimination was a but-for cause of the employment action.   *Id.* at 1177-78.   However, "if they show that age was a but-for cause of differential treatment in an employment decision but not a but-for cause of the decision itself," they can still "seek injunctive or other forward-looking relief."   *Id.* at 1178.

### a.   Allen's second termination from the New Orleans USPS station

The burden is first on Allen, then, to establish a prima facie case of age discrimination, which requires her to prove four elements: (1) discharge; (2) qualification for the position; (3) protected-class status at the time of discharge; and (4) replacement by someone outside the protected class.  *Pacovsky*, 347 F. App'x at 44; *see Sauer v. ICI Paints in N. Am.*, 44 F. Supp. 2d 827, 832 (W.D. Tex. 1999) ("The prima facie case must be established before proceeding because it is a sine qua non to further analysis.").   In the present matter, USPS does not contest the first and third elements, that Allen was discharged and that she was within a protected class, but USPS does contest the other two elements, that Allen was qualified for the position and replaced by someone younger.[54]

---

[54] R. Doc. 59-1 at 14-15.

To satisfy the second element, a plaintiff must show that she meets "objective employment qualifications." *Conklin v. Senior Hous. Servs., Inc.*, 2006 WL 265513, at *3 (N.D. Tex. Feb. 3, 2006) (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001)).  The Fifth Circuit has instructed that the term "'qualified' has a broadly colloquial meaning in [the ADEA] context; it refers to objective job qualifications (e.g., training, experience, and physical capacity), not 'essential functions' or any other term of art associated with the term's counterpart in the Americans with Disabilities Act." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 n.7 (5th Cir. 2015).  A plaintiff may establish that she was qualified for a position by showing that she "continued to possess the necessary qualifications for [her] job at the time of the adverse action," meaning, for example, that she "had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered [her] unfit for the position for which [she] was hired." *Salazar v. Cargill Meat Sols. Corp.*, 628 F. App'x 241, 245 (5th Cir. 2015) (quoting *Bienkowski*, 851 F.2d at 1506 & n.3).  "[A]n ADEA plaintiff 'need not show that [her] performance met [her] employer's expectations to establish a prima facie case'; evidence of employer dissatisfaction 'does not prove a lack of qualifications at the prima facie stage.'" *Id.* (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350-51 (5th Cir. 2007)) (alteration omitted).

In this case, Allen's complaint simply states that "she was qualified for the position," but neither it, nor her opposition memorandum, elaborates on how she was qualified for the position at the New Orleans USPS station.[55]  Unsubstantiated assertions and conclusory allegations are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Adams v. Stanley Sec. Sols., Inc.*, 2007 WL 2979867, at *3 (N.D. Tex. Oct. 11, 2007) (finding that a plaintiff failed to establish the second element of his prima facie case because he merely alleged

---

[55] R. Doc. 1 at 16.

he was qualified for the position without submitting any competent summary-judgment evidence to support the allegation). Nonetheless, "[t]o establish a prima facie case, a plaintiff need only make a very minimal showing," *Kestler v. Motiva Enters., LLC*, 2016 WL 852477, at \*12 (E.D. La. Mar. 4, 2016) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)), and in Allen's affidavit, she states how she was qualified for the second position at the Metairie USPS station: "I met all criteria for the second Metairie position (Job No. 10292967) by passing background screening, drug screening, driving screening, scoring a 99 on the test and being physically able to handle the job. As being a prior employee, I also had some on-the-job experience …."[56] USPS contests Allen's purported qualifications merely by asserting that it "gave numer[ous] reasons why the Plaintiff was not qualified for the position and why she was terminated."[57] While Lagrue's employee evaluation and probationary report and Porche's letter of termination indicate why Allen was allegedly terminated (her unsatisfactory job performance), they do not indicate why Allen was not qualified for the position.[58] Employer dissatisfaction with an employee is not tantamount to an employee's lack of qualification. Therefore, this Court assumes that Allen was qualified for the position.

Regarding the fourth element, Allen has not shown that she was replaced by someone outside of her protected class, *i.e.*, by someone younger. Instead, Allen attempts to show, through her own affidavit, that her termination was otherwise because of age.[59] Thus, while Allen's

---

[56] R. Doc. 68-2 at 7.

[57] R. Doc. 59-1 at 14-15.

[58] R. Docs. 59-6; 59-7. In her declaration, Lagrue states, "Plaintiff did not demonstrate the ability to achieve the job," and in Porche's declaration, he states, without elaboration or explanation, "Plaintiff was informed that she was terminated because she did not display and did not possess the qualifications for the position." R. Docs. 59-16 at 2; 59-4 at 2.

[59] R. Doc. 68-2. Allen also submits the declaration of Glenn E. Webster, R. Doc. 68-3, but his declaration is not at all germane to the fourth element necessary to prove discrimination based on age. Rather, it merely recites Webster's personal observations about the insufficiency of the documentation of Allen's performance deficiencies, based on his review of Allen's EEO complaint file and other documents. *Id.* at 3-6. USPS filed a motion to strike the

affidavit does state that she was treated differently than a younger CCA, Chloe Bickman,[60] to prove such a claim, the alleged similarly situated employee "must (1) have had the same job responsibilities; (2) have shared the same supervisor, or had their employment status determined by the same person; and (3) have comparable violation histories." *Hinga v. MIC Grp., L.L.C.*, 609 F. App'x 823, 827 (5th Cir. 2015). Allen only asserts that Bickman was a "younger CCA."[61] She does not state Bickman's age, Bickman's supervisor, Bickman's violation history, or if Bickman was also a probationary employee. Instead, Allen states that she was given more mail and harder routes than Bickman and that Bickman was allowed to do certain things that she herself could not.[62] While these assertions may address alleged differences in treatment, Allen has not alleged enough facts for Bickman to be considered a similarly situated employee. *Id.* at 828 ("Without evidence of the same job responsibilities, nearly identical conduct, or similar violation histories, there is no prima facie case of discrimination."); *see, e.g.*, *Maestas v. Apple, Inc.*, 546 F. App'x 422, 427 (5th Cir. 2013) (concluding that since the co-workers identified by the plaintiff did not share the same work performance issues as the plaintiff, "[s]uch a comparison falls short of the 'nearly identical' circumstances standard").

As evidence of age discrimination, Allen also states in her affidavit that Porche made age-based comments directed towards her.[63] "In evaluating federal discrimination claims, [the Fifth Circuit] has distinguished between workplace comments presented as direct evidence of discrimination and those presented as additional (*i.e.*, circumstantial) evidence in the course of a *McDonnell Douglas* analysis." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

---

declaration, R. Doc. 73, but that motion is dismissed as moot because the Court grants summary judgment even considering Webster's testimony.

[60] R. Doc. 68-2 at 9-10.

[61] *Id.* at 9.

[62] For example, Allen states that Bickman was able to sort mail on her routes and did not work on Saturdays. *Id.* at 9-10.

[63] *Id.* at 3-4.

Comments may serve as sufficient direct evidence of age discrimination if they are: "1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996). "Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, however," a more flexible two-part test is applied: "a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Reed*, 701 F.3d at 441. "'Comments that do not meet these criteria are "stray remarks" and, standing alone, are insufficient to defeat summary judgment.'" *Morse v. Bd. of Supervisors La. State Univ. Agric. & Mech. Coll.*, 2020 WL 2037192, at *5 (E.D. La. Apr. 28, 2020) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010)). There are typically two situations in which a court will find a statement to be evidence of age discrimination: "where a statement references age in a derogatory or stereotypical way," and "where the employer's statement shows a desire to replace older employees with younger ones." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 458 (5th Cir. 2019).

Here, Allen alleges that Porche, her supervisor, stated on November 20, 2018, that he "does not like to hire older workers because they tend to get hurt and go on restriction until they retire," and that he "did not need another carrier with restrictions on his clock."[64] Because this statement was made months before the termination at issue and coincided with the settlement of her first EEO complaint and reinstatement, it amounts to circumstantial evidence of age discrimination, and, thus, the more flexible two-part test is applied, so long as there is "other

---

[64] *Id.* at 3-4.

alleged discriminatory conduct."  The statement clearly references age in a stereotypical way, as it refers to the likelihood of older workers becoming injured and going on restriction until retirement, and it was made by someone primarily responsible for the employment action, Porche. However, circumstantial evidence in the form of comments must be accompanied by other alleged discriminatory conduct.  And, here, Allen points to no other evidence of age-based discriminatory conduct.  Therefore, Allen has failed to establish a prima facie case of age discrimination regarding her termination from the New Orleans USPS.

Even if Allen did establish a prima facie case, USPS has articulated legitimate, non-discriminatory reasons for terminating her.  USPS alleges that it terminated Allen's employment because of her "failure to perform work which meets the expectations of the position," her "failure to accomplish tasks in an efficient and timely manner," and her "failure to work at a sufficient speed to keep up with the amount of work required by the position."[65]  Poor job performance is a legitimate, non-discriminatory reason for terminating an employee.  *See, e.g.*, *Koteras v. Briggs Equip., Inc.*, 854 F. App'x 583, 585 (5th Cir. 2021) (citing *Little v. Republic Refin. Co.*, 924 F.2d 93, 96 (5th Cir. 1991), for its "holding that the plaintiff's poor job performance was a legitimate, non-discriminatory reason for his termination"); *Benjamin v. Felder Servs., L.L.C.*, 753 F. App'x 298, 302 (5th Cir. 2018) ("We have repeatedly recognized that poor job performance is a legitimate, nondiscriminatory reason for firing an employee.") (collecting cases).

---

[65] R. Doc. 59-1 at 4 (citing Allen's letter of separation dated Feb. 26, 2019, R. Doc. 59-7).  As previously noted, USPS identifies other reasons for her termination, including that she "resisted constructive criticism from her supervisor, failed to follow instructions, expanded the street time of her assignments, left mail in the building and had to return for the mail, and left the scanner in the building and had to return from the route for the scanner."  *Id.* at 5. USPS asserts further that Allen's "inefficiencies resulted in expanded street time and delayed mail, which cost the USPS money," and that Allen was "advised of her deficiencies during her probationary evaluations and her work did not improve."  *Id.* at 16.  Many, if not most, of these additional reasons may also be grouped under the heading of "poor job performance."

The burden then shifts back to the plaintiff to prove that the defendant's reasons are pretexts for unlawful discrimination.  "'Pretext cannot be established by mere "conclusory statements" of a plaintiff who feels she has been discriminated against.'"  *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, 709 F. App'x 243, 248-49 (5th Cir. 2017) (quoting *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir. 1984)) (alterations omitted).  A "[p]laintiff's subjective disagreement and dissatisfaction with his performance review does not create pretext."  *Roper v. Exxon Corp.*, 27 F. Supp. 2d 679, 683 (E.D. La. 1998) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir.1993)).  Additionally, where the same-actor inference applies, the inference weighs against a plaintiff's evidence of discrimination.  *See Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009).  "The 'same actor' inference arises when the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff and gives rise to an inference that discrimination was not the motive behind plaintiff's termination."  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 (5th Cir. 2000).  In other words, the same-actor inference creates a presumption that animus was not present where the same actor responsible for terminating an employee was the one who had hired the employee.  *See Spears*, 337 F. App'x at 421-22.  When the actor who does the hiring and firing is also a member of the same protected class, this inference is further enhanced.  *Robideaux v. ISB Fin. Corp.*, 2000 WL 34531059, at *1 (5th Cir. June 26, 2000); *Walker v. S. Holdings, Inc.*, 934 F. Supp. 197, 200 (M.D. La. 1996) (citing *Brown*, 82 F.3d at 658).

Allen maintains that the evidence concerning her poor job performance is pretextual because it consists of "backdated" evaluations that "provided vague, unsubstantiated, and non-constructive criticism of her job performance without sufficient time to assimilate said criticism."[66]

---

[66] R. Doc. 68 at 20.  Allen provides no evidence for her conclusory assertion that the evaluations are backdated.

Again, for support, she points to Webster's declaration.  But his declaration merely delineates his personal observations about how Allen's noted deficiencies might have been better documented; it identifies neither (1) any requirement for such documentation or waiting period before a USPS employee may be terminated for poor job performance; or (2) countervailing evidence tending to undermine USPS's claim of poor job performance.  Hence, Allen has not carried her burden to show pretext.

Moreover, the same-actor inference applies in this case because it was Porche who rehired Allen in November 2018, and then fired her in February 2019.  This inference is enhanced because, at the time Allen was terminated, she was 52 years old and Porche was 53 years old.[67] While the same-actor inference is not irrebuttable, *Spears*, 337 F. App'x at 422, Allen has failed to produce sufficient evidence to rebut the inference.

In sum, Allen has not stated a prima facie case of age discrimination based on her termination.  Even if she had, USPS articulated a non-discriminatory reason for her termination, which she has not rebutted.

### b.  Non-selection by the Metairie USPS station

To establish a prima facie case of age discrimination when a plaintiff is not selected for a position, she must prove essentially the same four elements:

> (1) she was forty years of age or older at the time she was not selected; (2) she was qualified for the position; (3) she was not selected; and (4) either (a) a candidate outside her protected class was selected; (b) someone younger was selected; or (c) she otherwise was not selected because of her age.

*Irvin v. Ascension Par. Sch. Bd.*, 2017 WL 354854, at *9 (M.D. La. Jan. 24, 2017).  Examining these elements relative to Allen's claim regarding the first Metairie CCA position for which she

---

[67] R. Docs. 59-1 at 5; 59-4 at 2; 1 at 5.  Even Lagrue, who conducted Allen's performance reviews, was approximately 45 years old, and thus was also within the protected class.  R. Doc. 59-16 at 1; *see* 29 U.S.C. § 631(a) ("The prohibition [of the ADEA] shall be limited to individuals who are at least 40 years of age.").

applied, Allen fails to show that she was qualified for the position.  Station postmaster McFall's alleged reason for not hiring Allen was that she was not qualified for the position because she was previously terminated by USPS.[68]  Allen admits in her affidavit that "a CCA who is separated from [USPS] employment can be rehired by the USPS but a CCA whose employment is terminated cannot be rehired by the USPS."[69]  Therefore, Allen, by her own admission, was not qualified for the position because she had been terminated by USPS.

Allen also fails this element (qualification) with respect to the second Metairie CCA position.  McFall states that Allen was not qualified for the position, and was not selected, because "she was not honest in the interview process."[70]  Specifically, McFall attests that Allen said she was working at the New Orleans USPS when in fact she had been terminated.[71]  In response, Allen insists in her affidavit that she accurately disclosed her employment status on her application and during her interview.[72]  While this clash creates a genuine issue of material fact as to whether Allen was honest in the interview process, it does not undermine the fact that, because Allen had been terminated from USPS at a point in time before the interview, she would not have been objectively qualified for the position, even if she had been honest on her application.  Thus, Allen has failed to establish her prima facie case of age discrimination regarding her non-selection for a position at the Metairie USPS station.

---

[68] R. Doc. 59-8 at 1.  Allen was terminated on February 26, 2019, and she alleges she was not selected for the first Metairie position on or about the same day. R. Doc. 1 at 10.  In Allen's statement of contested material facts, she states that she disclosed her employment status to the manager of the Metairie station shortly after she was terminated in February 2019. R. Doc. 68-1 at 6.  Therefore, it can be assumed that Allen was terminated from New Orleans before she was not selected for the Metairie position.

[69] R. Doc. 68-2 at 2.

[70] R. Doc. 59-8 at 2.

[71] *Id.* at 1.

[72] R. Doc. 68-2 at 5.

### c.   Non-selection by the Marrero USPS station

As for Allen's non-selection at the Marrero USPS station, Allen again fails to prove the second element (qualification) of her prima facie case.  Station postmaster Leonard states that Allen was not selected for hire because of Allen's prior unsatisfactory performance and termination.  And, again, Allen admits in her affidavit that USPS will not hire an employee who has been terminated from USPS.[73]  Therefore, Allen was not objectively qualified for the position.

### 3.  Retaliation claims

While not explicitly provided in the ADEA, the Supreme Court has held that "§ 633a(a) [the federal-sector provision] prohibits retaliation against a federal employee who complains of age discrimination."  *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008).  Whereas § 623(d) specifically prohibits retaliation in the private sector, § 633a contains a "broad prohibition of 'discrimination,'" which includes retaliation.  *Id.* at 487-89 (citations omitted) ("[O]ur holding that the ADEA prohibits retaliation against federal-sector employees is not in any way based on § 623(d).  Our conclusion, instead, is based squarely on § 633a(a) itself, 'unaffected by other sections' of the ADEA.").  Like ADEA discrimination claims, ADEA retaliation claims require the application of a burden-shifting analysis, which first requires a plaintiff to establish a prima facie case by showing: "'(1) that he engaged in a protected activity, (2) that there was an adverse employment action, (3) that a causal link existed between the protected activity and the adverse employment action' and (4) that he was qualified to hold the position."  *Richard v. St. Tammany Par. Sheriff's Dep't*, 2018 WL 2065594, at *8 (E.D. La. May 3, 2018) (quoting *Wooten*, 788 F.3d at 496-97) (alteration omitted); *see Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001) ("We have never expressly made qualification a *prima facie* element of an ADEA

---

[73] *Id.* at 2.

retaliation claim, but today we decide that such an element is necessary."); *McDaniel v. Nat'l R.R. Passenger Corp.*, 705 F. App'x 240, 245 (5th Cir. 2017) ("For an ADEA retaliation claim, a plaintiff must also show 'he was qualified for his position.'" (quoting *Wooten*, 788 F.3d at 497)). "'Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation.'" *Aguillard v. La. Coll.*, 824 F. App'x 248, 251 (5th Cir. 2020) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007). When temporal proximity is "very close," it alone may suffice to establish the causal connection. *Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 884 (5th Cir. 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

Establishing a prima facie case creates an inference of retaliation, and the burden shifting analysis then applies as follows:

> "This inference [of retaliation] shifts the burden of proof to the defendant, who must then articulate a legitimate non-discriminatory reason for the challenged employment action." Once the defendant has asserted such a reason, the inference created by the plaintiff's establishing a prima facie case is dropped from the case. At this point, summary judgment is appropriate unless the plaintiff can show that the defendant's rationale is pretextual. The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a but-for cause of the termination.

*Hardy v. Shell Chem. Co.*, 693 F. Supp. 2d 611, 619-20 (quoting S*hackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir.1999)) (internal citations omitted).

### a.  Termination from the New Orleans USPS station

In this case, Allen claims that her second termination from the New Orleans USPS station amounted to retaliation. She meets the first element of her prima facie case of retaliation because, by filing an EEO complaint, she engaged in statutorily protected activity. *Hardy*, 693 F. Supp. 2d at 624 ("Filing a charge of discrimination and reporting discriminatory practices to a supervisor

are protected activities under the ADEA."). Allen satisfies the second element because she suffered an adverse employment action when her employment was terminated.

With regard to the third element – causal connection – Allen settled her first complaint with USPS on November 20, 2018, and she was terminated over three months later, on February 26, 2019.[74] Although there is no bright-line rule indicating when temporal proximity is deemed "very close," the Fifth Circuit has concluded that periods of five days, six weeks, two months, and even sometimes two-and-a-half months between a protected activity and an adverse employment action is sufficient to provide enough of a causal connection. *See Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (five days); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (six-to-seven weeks); *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 949 (5th Cir. 2015) (six-and-a-half weeks); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) (two months); *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (two-and-a-half months). However, in *Besser v. Texas General Land Office*, the Fifth Circuit held that a period of two-and-a-half months between a protected activity and the adverse employment action, standing alone, is not within the "very close" proximity necessary to establish causation. 834 F. App'x at 885. In doing so, the court expressly noted that the Supreme Court "has favorably cited a decision holding that three months is not within the 'very close' requirement." *Id.* (citing *Breeden*, 532 U.S. at 273-74). Because over six months had passed between Allen's first EEO contact and her second termination, and over three months had passed between Allen's settlement of her first EEO complaint and her second termination, the events are not close enough in time to the adverse employment action to be considered "very close." But Allen also initiated an informal EEO contact on January 7, 2019, just seven weeks before she was

---

[74] R. Docs. 1 at 7-8; 59-2 at 1-2.

terminated.[75]   Seven weeks between a protected activity and the adverse employment action is enough to provide a causal connection.

Even so, to prove the element of causation, there must be some evidence, at a minimum, that the "'employer knew about the employee's protected activity.'"  *Hauser v. Schneider Elec. Sys. USA, Inc.*, 819 F. App'x 247, 250-51 (5th Cir. 2020) (quoting *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003)) (concluding that despite the plaintiff filing an EEO charge just two weeks before he was terminated, the plaintiff still needed to prove decisionmaker knowledge).   For this, the Fifth Circuit has "consistently" required proof of "'actual' decisionmaker knowledge," as general corporate knowledge is insufficient.  *Id.* (quoting *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 360 (5th Cir. 2017)).

Here, Allen has not produced any evidence that Porche, her supervisor at the New Orleans station, actually knew that she contacted the EEOC on January 7, 2019.  Instead, USPS has produced a declaration by Porche stating only that he knew of Allen's first complaint filed in August 2018.[76]  Therefore, Allen fails to prove even the minimum requirement that the employer had actual knowledge of the protected activity at issue.

Even if Allen could prove that Porche knew of her January 2019 EEO contact, her claim fails in a later part of the analysis.[77]  Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for terminating the plaintiff.   In this case, USPS says it terminated Allen because of her poor performance,[78] which is a legitimate, non-discriminatory reason for terminating an employee.  *See*

---

[75] R. Doc. 1 at 17-18.
[76] R. Doc. 59-4 at 2.
[77] Allen has met the fourth element of her prima facie case – that she was qualified for the position to which she was terminated.  As stated previously, although Allen does not specify how she was qualified for the New Orleans USPS position, the Court assumes she was because of her statement regarding her other qualifications and because USPS does not effectively contest her qualifications.  *See supra* section III(B)(2)(a).
[78] R. Doc. 59-1 at 4; *see also* R. Doc. 59-7.

*Hardy*, 693 F. Supp. 2d at 625.  However, "'where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer a legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*.'"  *Id.* (quoting *Shackelford*, 190 F.3d at 408) (emphasis in original).  USPS has shown that Allen, a probationary employee, was terminated when she was because she had just received poor performance reviews and there was only one week remaining before the expiration of her probationary period.  As USPS explains, Allen was afforded opportunity to improve her performance during her probationary period but she did not improve.[79]  Therefore, USPS has met its burden of articulating a legitimate, non-discriminatory reason for Allen's termination.

Lastly, the burden shifts back to the plaintiff to show that the defendant's legitimate, non-discriminatory reason is pretextual.  *Id.* at 619-20.  In other words, the plaintiff must "'prove that the adverse employment action would not have occurred "but for" the protected activity.'"  *Cox v. DeSoto Cnty.*, 407 F. App'x 848, 851 (5th Cir. 2011) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).  While close timing may be sufficient to establish a prima facie case of retaliation, "suspicious timing alone is insufficient to establish pretext."  *Shannon v. Henderson*, 275 F.3d 42, 2001 WL 1223633, at *1 (5th Cir. 2001).  Moreover, because the same-actor inference applies in this instance, the inference weighs against any evidence produced by Allen.  *Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 784 (M.D. La. 2004) (citing *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir.1997)) ("Under the same actor inference, if the same actor takes a positive employment action towards an employee after that employee engages in protected activity, any inference of retaliation dissipates.").  Here, Allen has not

---

[79] R. Doc. 59-2 at 3.

produced sufficient evidence to rebut the same-actor inference or to prove that USPS's reasons for terminating her were pretextual.

### b.  Non-selection by the Metairie USPS station

On February 26, 2019, and again on May 21, 2019, Allen was not selected for hire at the Metairie USPS station.[80]  With regard to Allen's first non-selection, she meets the first two elements of establishing her prima facie case of retaliation.  Allen engaged in protected activity when she initiated an informal EEO contact on January 7, 2019, and she suffered an adverse employment action when she was not selected for hire on February 26, 2019.  Additionally, because her non-selection occurred the same day as her termination, just six weeks after engaging in the protected activity, temporal proximity alone may establish a causal connection.  However, Allen has not produced any evidence to prove that the decisionmaker, Metairie station postmaster McFall, had actual knowledge of her EEO activity.  Allen states in her affidavit that she told manager Chad Taylor about her prior EEO activity during the interview and that "[i]t is [her] understanding of USPS hiring procedures, that Taylor as the designee for interviews would have given [her] interview notes to McFall,"[81] but she does not provide any evidence of this occurring. Therefore, she has failed to prove that McFall knew of her protected activity.  *See Thompson v. E. Feliciana Sch. Sys.*, 2021 WL 3260059, at *8 (M.D. La. July 29, 2021) ("'[C]arrying that burden requires more evidence than mere curious timing coupled with speculative theories, and isolated evidence of generalized discussions between a decisionmaker and someone with knowledge of the plaintiff[']s protected activity creates only a speculative inference regarding the decisionmaker's awareness.'") (quoting *Robinson*, 714 F. App'x at 360).

---

[80] R. Doc. 68 at 4.

[81] R. Doc. 68-2 at 4.  On the other hand, McFall states in his declaration that he was not aware of Allen's prior EEO activity.  R. Doc. 59-8 at 1.

Even if Allen did meet the third element (causal connection), Allen has not met the fourth element – that she was qualified for the position.  As previously discussed, Allen admits in her affidavit that USPS policy proscribes hiring previously terminated employees.  Allen was terminated from the New Orleans USPS station "on or about" the same day she was not selected by the Metairie USPS.  Thus, because of Allen's termination, she was not objectively qualified for the position.

With respect to Allen's second non-selection by the Metairie USPS station, Allen again meets the first two elements because she engaged in protected activity by making the informal EEO contact on January 7, 2019, and by filing an EEO complaint against USPS on March 19, 2019, and she suffered an adverse employment action when she was not selected for hire on May 21, 2019.  Allen also meets the third element.  Just two months passed between the protected activity and the adverse employment action, thus establishing a causal connection.  In this instance of non-selection, Allen does provide evidence that the decisionmaker knew of her EEO activity.  Allen states in her affidavit that Tracy Segura was the decisionmaker because McFall was on leave at the time.[82]  She states that when she talked to Segura after not being selected, Segura explained that it was because Allen was "at war" with USPS.[83]  Allen then states that when McFall returned, he affirmed Segura's decision to not hire her due to her prior EEO activity.[84]  Therefore, Allen has provided enough evidence of decisionmaker knowledge to satisfy the causation element of the analysis.  Regardless, Allen again was not objectively qualified for the position because of her prior termination from USPS.  Allen thus fails to establish her prima facie case of retaliation regarding her non-selection from the Metairie USPS station.

---

[82] R. Doc. 68-2 at 5
[83] *Id.*
[84] *Id.* at 5-6.

### c.   Non-selection by the Marrero USPS station

Allen establishes the first two elements of her prima facie case of retaliation.  She engaged in protected activity in filing her EEO complaint on March 19, 2019, and suffered an adverse employment action by not being selected for hire on May 8, 2019.[85]  While less than two months passed between the two events, Allen nonetheless fails to meet the third element because she again fails to prove that the decisionmaker had actual knowledge of her protected activity.  Allen's proof that Marrero station postmaster Alisa Leonard knew of her prior EEO activity is that Leonard states in her declaration that she was not aware of Allen's prior EEO activity but that the employee ultimately hired for the position did not have prior EEO activity.[86]  The inference Allen seeks to draw does not follow from Leonard's statements but instead amounts to unsupported conjecture. Allen also alleges that Leonard contacted Porche about Allen,[87]  but this, too, creates only a speculative inference of decisionmaker knowledge, not actual decisionmaker knowledge.  *See, e.g.*, *Turner v. Jacobs Eng'g Grp., Inc.*, 470 F. App'x 250, 253 (5th Cir. 2012) (rejecting a plaintiff's argument that the court should infer decisionmaker knowledge based on one comment made by the decisionmaker and general conversations between the decisionmaker and employees with knowledge of the plaintiff's protected activity); *see also Robinson*, 714 F. App'x at 360. Moreover, Allen also fails the fourth element of her prima facie case because she was not objectively qualified for the position due to her prior termination from USPS.

---

[85] R. Doc. 1 at 11.
[86] R. Doc. 68 at 22.
[87] *Id.* at 22-23.

**IV.     CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that USPS's motion for summary judgment (R. Doc. 59) is GRANTED,

and Allen's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 13th day of April, 2022.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE